# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>THINK FINANCE, LLC, formerly known as Think Finance, Inc.,<br><br>Defendants. | Case No. CV-17-127-GF-BMM<br><br><br><br>**ORDER** |

Plaintiff Consumer Financial Protection Bureau ("CFPB") commenced this action on November 15, 2017. (Doc. 1.) The Complaint alleges four violations of the Consumer Financial Protection Act. (Doc. 1 at 26-30.) Defendant Think Finance, LLC ("Think Finance") filed the instant Motion to Transfer Venue on January 5, 2018. (Doc. 4.) Think Finance seeks an order transferring this action to the U.S. District Court for the Northern District of Texas. Think Finance seeks this transfer with the understanding that the U.S. District Court would refer the matter to the U.S. Bankruptcy Court for the Northern District of Texas. (Doc. 5 at 6.)

## I. BACKGROUND

Think Finance is a privately held company that performs critical functions

1

for lending businesses, including provision of software, analytics, and marketing services. (Doc. 1 at 3-4.) CFPB is an independent agency of the United States Government created under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5491(a). (Doc. 1 at 2.)

CFPB's Complaint concerns three lending businesses owned by Indian tribes ("Tribal Lenders") for which Think Finance provided critical services. (Doc. 1 at 4.) One such lender, Plain Green, LLC ("Plain Green") is located in the District of Montana. (Doc. 1 at 5.) Plain Green did not make loans to Montana consumers. CFPB alleges that the other two Tribal Lenders named in the Complaint originated loans in Montana to Montana consumers. (Doc. 13 at 11 fn. 2.)

The Complaint alleges that Think Finance, through the Tribal Lenders (who are not party to this action), collected loan payments that customers did not owe, as the loans issued to those customers were void *ab initio* due to violations of state law. (Doc. 1 at 26.) CFPB alleges that Think Finance nevertheless collected on these void loans through unfair and abusive practices. (Doc. 1 at 28-29.) Finally, CFPB alleges that Think Finance provided substantial assistance to Tribal Lenders and other entities. (Doc. 1 at 30.) CFPB contends that Think Finance acted knowingly or recklessly in providing this substantial assistance to the Tribal Lenders. *Id.*

Think Finance and its subsidiaries filed voluntary petitions for relief under

Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq., in the

U.S. Bankruptcy Court for the Northern District of Texas on October 23, 2017.

(Doc. 5 at 8.) CFPB filed this action three weeks later on November 15, 2017.

The Bankruptcy Court jointly administers the bankruptcy actions of Think

Finance and its subsidiaries. (Doc. 5 at 8.) The joint bankruptcy action has

triggered the automatic stay provision of 11 U.S.C. § 362(a). The automatic stay

provision has put on hold numerous other putative class action claims filed against

Think Finance in other states. Think Finance anticipates that the Bankruptcy Court

will resolve claims underlying those putative class actions. (Doc. 5 at 9.)

The Pennsylvania Attorney General filed a similar action against Think

Finance in 2014. *Pennsylvania v. Think Finance, et al.*, No. 14-7139-JCJ (E.D.

Penn. 2014). The Pennsylvania action stands exempt from the automatic stay

provision, however, as it involves a police or regulatory action. 11 U.S.C. §

362(b)(4). Think Finance has moved to transfer the Pennsylvania case to the

Northern District of Texas. The U. S. District Court for the Eastern District of

Pennsylvania has not yet ruled on the transfer motion. (Doc. 5 at 10.)

Think Finance moves to transfer this action to the U.S. District Court for the

Northern District of Texas. Think Finance anticipates that the District Court in

Texas would refer the matter to the U.S. Bankruptcy Court for the Northern

District of Texas. (Doc. 5 at 6.) *See In re Gugliuzza*, 852 F.3d 884, 890 (9th Cir. 2017).

## II. DISCUSSION

The parties disagree as to which change of venue statute this Court should apply. (Docs. 5 at 14; 13 at 15.) Both 28 U.S.C. § 1404 and 28 U.S.C. § 1412 afford the Court discretion to transfer venue based on consideration of the same factors: the interest of justice and the convenience of the parties (and witnesses). 28 U.S.C. § 1404, § 1412. The presumption or deference afforded to either party represents the major difference between the two venue statutes. A second difference between the two statutes arises from the fact that Congress drafted § 1412 in the disjunctive. Congress equipped a court with the discretion to transfer a case to the bankruptcy court either for the interest of justice *or* for the convenience of the parties. 28 U.S.C. § 1412.

Section 1404 defers to the plaintiff's selection of forum. *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., LLC.*, No. C-06-04693 JCS, 2008 WL 425638, at *1 (N.D. Cal. Feb 14, 2008). CFPB argues that § 1404 should apply. Section 1404 further requires that the party seeking the transfer -- Think Finance -- demonstrate that *both* factors favor transfer. 28 U.S.C. § 1404. Section 1412, by contrast, "carries a presumption in favor of" transfer to the bankruptcy court. *Id*.

Think Finance argues that § 1412 should apply. The Court will analyze the pending motion under both statutes.

## A. Consideration of Police and Regulatory Actions

CFPB has chosen to file what it characterizes as a police and regulatory action in the District of Montana. CFPB seeks injunctive relief as well as monetary penalties, damages, disgorgement, and costs that will have an "effect" on Think Finance's bankruptcy estate. (Doc. 1 at 31.) CFPB does not dispute that this action "relate[s] to" the bankruptcy case.

A court in the District of Montana previously transferred a civil breach of contract claim "related to" a bankruptcy action pursuant to § 1412. *McGillis/Eckman Investments-Billings, LLC v. Sportsman's Warehouse, Inc.*, CV 10-26-BLG-RFC-CSO, 2010 WL 3123266, at *7 (D. Mont. June 30, 2010), *adopted* CV-10-26-BLG-RFC, 2010 WL 3153416 (D. Mont. Aug. 9, 2010). Other district courts within the Ninth Circuit have reached differing conclusions regarding the applicability of § 1412 to cases only "related to" bankruptcy actions, as opposed to the bankruptcy actions themselves. *See EnSource Investments, LLC v. Tatham*, No. 17-cv-79, 2017 WL 3923784, at *4 (S.D. Cal. Sept. 7, 2017) (declining to apply § 1412); and *Senorx, Inc. v. Coudert Bros., LLP*, No. 7-1075, 2007 WL 2470125 (N.D. Cal. August 27, 2007) (applying § 1412). The Ninth Circuit has not resolved this split.

The district court in *EnSource* determined that § 1412 does not provide for transfer of matters "related to" bankruptcy actions. *Ensource*, 2017 WL 3923784, at *4. The court declined, based on § 1404, to transfer venue to the Southern District of Texas where one of the defendants had filed for bankruptcy protection. *Id.* The court noted that the defendants had traveled to California to pitch an investment opportunity to plaintiffs. *Id.* at 1. The court further indicated that it would exercise its discretion to decline to transfer even under § 1412 because the bankruptcy proceeding in Texas involved only one of the defendants. *Id.*

By contrast, the district court applied § 1412 and granted the motion to transfer filed by a defendant New York law firm in *Senorx, Inc.* Plaintiffs had filed professional negligence claims against the law firm in its representation of plaintiffs on several international patent matters. *Senorx, Inc.*, 2017 WL 2470125, at * 1. The district court recognized that witnesses would be found in both California, where plaintiffs had filed the case and where the law firm had provided the legal advice, and in New York, the home office of the law firm. *Id.* at *2. The district court also cited the fact that resolution of the case would "likely involve numerous expert witnesses and issues of international law which favor neither California nor New York." *Id.*

None of these cases concerned a federal agency police or regulatory action. The parties have pointed to no authority, and the Court has found none, in which a

court transferred a police or regulatory action brought by a federal agency to a bankruptcy proceeding. CFPB seeks to distinguish this action based on its representation that it involves a police or regulatory action to enforce consumer protection laws. Think Finance does not dispute this interpretation. (Doc. 13 at 13.)

The Court notes that many matters "related to" a bankruptcy action remain subject to an automatic stay pursuant to 11 U.S.C. § 362(a)(1). Congress expressly has carved out an exception for police and regulatory actions, however, from the automatic stay provision. 11 U.S.C. § 362(b)(4). This exception ensures that bankruptcy does not provide a "haven for wrongdoers" to escape the reach of the government's police and regulatory powers. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107 (9th Cir. 2005) (internal citations omitted). The Ninth Circuit in *Lockyer* applied the exception to the automatic stay required by § 362(b)(1) to an action brought by the California Attorney General to enforce federal antitrust law against a debtor who had filed voluntary petitions to reorganize. *Id.* at 1109.

The public policy underlying the automatic stay generates inherent tension with the public policy underlying the presumption of transfer in § 1412. Under § 1412, the question of "whether the requested transfer would promote the economic and efficient administration of the estate" represents "the most important consideration" that Courts must weigh in considering a venue transfer. *Sportsman's Warehouse*, 2010 WL 3123266, at *6 (citations omitted). Congress

has "expressly indicated" that police and regulatory actions present concerns "more important than the goals of efficiency and maximizing the estate," when it excepted such actions from the automatic stay. *In re First All. Morg. Co.*, 264 B.R. 634, 654 (Bankr. C.D. Cal. 2001).

Think Finance represented at oral argument that it filed the bankruptcy action before CFPB filed its Complaint in this case. Think Finance suggested that its bankruptcy filing in no way represented an attempt to avoid this enforcement action by seeking the "haven" of bankruptcy court as contemplated by *Lockyer*. The CFPB countered that Think Finance filed the bankruptcy action only after settlement negotiations with the CFPB had failed. The Court recognizes the danger that affording § 1412's presumption of transfer to Think Finance under these circumstances would contravene the public policy underlying the stay exception. *Lockyer*, 398 F.3d at 1107. This public policy, combined with the plain language of the statute, weighs in favor of applying § 1404.

## B.    The Balance of Factors Under 28 U.S.C. § 1404

Section 1404 provides that the Court "may transfer" a civil action "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). A district court should decide a motion to transfer venue based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation omitted). The Court

must weigh a number of case-specific factors before determining whether a motion to transfer venue under § 1404(a) would be appropriate. *Stewart*, 487 U.S. at 29 (1988) (citation omitted).

### 1.    Interest of Justice

The parties to this action ask the Court to consider the following factors in evaluating the interest of justice: 1) judicial economy; 2) Montana's local interests; 3) ability to receive a fair trial; 4) enforceability of the judgment; and 5) CFPB's original choice of forum. (Doc. 5 at 23) (citing *Sportsman's Warehouse*, 2010 WL 3123266, at *7). Think Finance argues that judicial economy weighs heavily in favor of the requested transfer. (Doc. 5 at 18.)

Think Finance asserts that this Court and the Bankruptcy Court may issue inconsistent rulings on a key issue of "whether the underlying loans issued by sovereign Native American Tribal lenders are subject to any state's law in the first instance." (Doc. 5 at 19.) Think Finance further argues that litigating two proceedings will waste its assets to the detriment of its creditors. (Doc. 5 at 19-23.) Think Finance also suggests that the bankruptcy proceeding may outpace this case. If that were the case, resolution of this dispute could delay resolution in the bankruptcy proceeding. Think Finance argues finally that this action may generate duplicate recoveries. *Id.*

With regard to the remaining four factors, Think Finance argues first that Montana has diminished local interests in this case. (Doc. 5 at 24.) Think Finance points to the fact that the Tribal Lender located in Montana did not lend to Montana residents. *Id.* Think Finance next contends that a monetary judgment in this case could not be enforced absent action by the Bankruptcy Court. (Doc. 5 at 24-25.) Think Finance further argues that the Court should consider Plaintiff's choice of forum a neutral factor. (Doc. 5 at 25.) Think Finance contends that § 1412 contains a presumption in favor of transfer. (Doc. 5 at 25.) Think Finance argues that CFPB has failed to allege any basis for bringing this action in this particular district. (Doc. 5 at 25.) Think Finance concedes that the ability to receive a fair trial factor should be considered neutral. (Doc. 5 at 24.)

A Bankruptcy Court within the Ninth Circuit recognized that Congress has "expressly indicated" that police and regulatory actions present concerns "more important than the goals of efficiency and maximizing the estate" when it excepted such actions from the automatic stay. *In re First All. Morg. Co.*, 264 B.R. at 654. The Court acknowledges the inconvenience of litigating in two forums. Congress considered the potential adverse impacts of litigating two concurrent cases, however, when it excepted police and regulatory actions from the automatic stay. 11 U.S.C. § 362(b)(4); *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997*), as amended on denial of reh'g* (Dec. 30, 1997).

The Ninth Circuit in *Universal Life Church* determined that the IRS's decision to revoke the Universal Life Church's tax exempt status during the Church's Chapter 11 bankruptcy proceedings met both tests for the exception to the automatic stay under 28 U.S.C. § 362(b)(4). *Universal Life Church,* 128 F.3d at 1297. Bankruptcy "should not prevent" police or regulatory actions from proceeding. *Id*. The decision by the IRS to revoke the church's tax exempt status resulted in an estimated $ 6,000,000 tax bill. *Id*. at 1296. The decision to declare bankruptcy could not shelter the church from the IRS's performance of a "law enforcement" and "public policy function." *Id*. at 1298.

Think Finance's arguments might prove more persuasive in a matter that did not involve a police or regulatory action. Think Finance's arguments to transfer this action fail to overcome the public policy underlying Congress's desire to allow police and regulatory actions to continue "free of the restrictions of the automatic stay." *Universal Life Church*, 128 F.3d at 1297. The Court will defer to CFPB's choice of forum under these circumstances.

The Court also considers this public policy in conjunction with Montana's substantial interest in hearing this matter. Plain Green did not lend directly to Montana customers. (Doc. 1 at 12.) CFPB alleges that Think Finance, through other Tribal Lenders identified in the Complaint, issued and collected loans to people in Montana. (Doc. 1 at 24.) CFPB asserts that Montana represents a

"unique" nexus as it represents the "only district" where both "relevant consumers and current and former employees of a Tribal Lender" can be found. (Doc. 13 at 10.)

CFPB further alleges that the Complaint implicates the law of the state in which this Court sits. Montana law renders void any loans made, or collected by, any lender without a license. Mont. Code Ann. § 32-5-103(1), (4). The Complaint asserts that Think Finance issued and collected loans that were void and unenforceable pursuant to Montana law. (Doc. 13 at 11, 23.) The Complaint contains no allegations that Think Finance collected on loans that would be void under Texas law. The Complaint contains no allegations that Texas customers received loans from Think Finance. These circumstances buttress CFPB's choice to bring this action in the District of Montana. Think Finance has failed to surmount the deference typically afforded to CFPB's choice of forum under § 1404. *Reid-Ashman Mfg., Inc.*, 2008 WL 425638, at *1.

### 2.    Convenience of the Parties

The parties ask the Court further to consider the following factors in evaluating the convenience of the parties: 1) the location of the parties; 2) access to proof; 3) convenience of witnesses; 4) availability of subpoena power for unwilling witnesses; 5) the expense of obtaining witnesses. (Doc. 5 at 23) (citing

*Sportsman's Warehouse*, 2010 WL 3123266, at \*7). Think Finance asserts that the convenience of the parties weighs in its favor.

Think Finance first argues that the Northern District of Texas would serve as a more convenient forum than Montana. Think Finance is located in Dallas, Texas. Think Finance suggests that the CFPB more easily could travel from Washington, DC to Dallas, Texas, than to Montana. (Doc. 5 at 25.) Think Finance reiterates that it is located in Dallas to support its claim that the remaining factors weigh in its favor. (Doc. 5 at 26-27.)

The Complaint alleges that Think Finance voluntarily conducted business in Montana. (Doc. 1. at 2.) CFPB highlights the numerous potential non-party witnesses located in Montana, including current and former employees of Plain Green, and relevant consumers. (Doc. 13 at 25.) The Court declines to adopt a rule that the rural nature of the District of Montana presents grounds for transfer for convenience alone. Think Finance has failed to demonstrate that transfer to the United States District Court for the Northern District of Texas, for referral to the Bankruptcy Court for the Northern District of Texas, serves the interest of justice and would be more convenient to the parties, as required by 28 U.S.C. § 1404.

## C.     The Balance of Factors Under 28 U.S.C. § 1412

This Court separately will analyze Think Finance's transfer motion pursuant to the factors contained in 28 U.S.C. §1412, out of an abundance of caution. Think

Finance must show by a preponderance of the evidence that transfer is warranted. *Sportsman's Warehouse*, 2010 WL 3123266, at *6. Section 1412 affords a presumption of transfer to the bankruptcy court either in the interest of justice, or for convenience of the parties. 28 U.S.C. § 1412. Section 1412 applies to "case[s] or proceeding[s] under title 11." 28 U.S.C. § 1412.

Think Finance argues that the Court broadly should read "under title 11" as used in § 1412 to include cases "related to" bankruptcy cases. (Doc. 5 at 14.) This interpretation would conform to the language in 28 U.S.C. § 1334(b) that confers jurisdiction on district courts of all civil proceedings "arising in *or related to* cases under Title 11." 28 U.S.C. § 1334(b) (emphasis added). A civil proceeding relates to a bankruptcy case if the "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins¸*743 F.2d 984, 994 (3d Cir. 1984)).

The United States Supreme Court has instructed that "significance and effect shall, if possible, be accorded to every word" when interpreting a statute, so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879) (internal citations omitted). When a term appears "in several places in a statutory text," the Court should read that term "the same way each time it appears." *Ratzlaf v. U.S.*, 510

U.S. 135, 143 (1994). Finally, where Congress "includes particular language in one section of a statute but omits it in another" Courts should presume "that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Ensource*, 2017 WL 3923784, at *4 (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (internal citations omitted)).

Title 28 of the U.S. Code addresses the judiciary and the judicial process. Section 1334(b) confers original jurisdiction on the district courts in bankruptcy cases. 28 U.S.C. § 1334(b). Section 1404 empowers a district court to consider the appropriate venue for any civil action. 28 U.S.C. § 1404. Section 1412 similarly empowers a district court to consider the appropriate venue for a bankruptcy action. 28 U.S.C. § 1412.

Congress drafted § 1412 to allow a district court to evaluate possible transfer of "case[s] or proceeding[s] under title 11." Section 1334(b) does not address the question of the appropriate venue for an action. Section 1334(b) provides only that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.*

Thus, § 1412, as a transfer statute, differs in two important ways from § 1334(b). Section 1412 addresses venue and the possibility of transferring an action to a more appropriate forum. Section 1334(a) confers jurisdiction of certain cases

on the district courts. Section 1334(b) expressly applies to actions "related to" bankruptcy cases. 28 U.S.C. § 1334(b). Section 1412 applies to a case or proceeding "under Title 11" and nowhere contains the more expansive words "related to."

Congress chose specifically in § 1334(b) to confer jurisdiction over "proceedings under title 11, or arising in or related to cases under title 11" to the district courts. 28 U.S.C. § 1334(b). To read "under title 11" in § 1412 to mean the broader "under title 11 *and related cases*" when Congress has drafted § 1334(b) also to include those proceedings "related to cases under title 11" would confer a different meaning on the phrase "under title 11" in each usage. This interpretation further would render superfluous and insignificant the phrase "related to cases under title 11," as drafted by Congress in § 1334(b). *Washington Mkt. Co.*, 101 U.S. at 115-16. The Court declines to adopt Think Finance's expansive interpretation of § 1412, and, instead will evaluate its motion to transfer pursuant to the plain language of § 1412.

### 1.    Interest of Justice

Think Finance primarily relies on the specter of inconsistent decisions to support its argument that transfer of the case to the Bankruptcy Court would serve the interest of justice. Think Finance points to the three weeks that elapsed between its filing of the bankruptcy action on October 23, 2017, and CFPB's filing

of the instant regulatory action on November 15, 2017. (Docs. 5 at 8; 1 at 32.) Think Finance contends that this three-week period means that the Bankruptcy Court may decide some common issues first.

Think Finance suggests that rulings by the Bankruptcy Court would require CFPB to "withdraw its claims with respect to" such issues to avoid the risk of inconsistent rulings. (Doc. 5 at 20.) Think Finance further warns that peremptory rulings by the Bankruptcy Court could "effectively render this proceeding moot as to the monetary relief sought against the debtors." (Doc. 5 at 21.) This line of argument fails to persuade the Court.

Think Finance cites the average time of 26.2 months from filing to trial in civil proceedings in the District of Montana. (Doc. 5 at 21.) Think Finance could provide no comparative information at oral argument about the press of business in the courts of the Northern District of Texas. More importantly, it appears that Think Finance has chosen to "cherry pick" data to suit its needs. The most recent data from the Administrative Office of the U.S. Courts paints two very different pictures for the workload facing district courts in the Northern District of Texas and the District of Montana. The overall caseload statistics provide little insight as the difference in population alone between the two districts skews the data. The "Actions per Judgeship" provide more meaningful insight.

For example, each judge in the Northern District of Texas faced on average

1,275 pending cases for the third highest total in the United States. Federal Court

Management Statistics – Profile at 34 (September 30, 2017). Each judge in the

District of Montana faced on average 355 pending cases for the 68th highest total in

the United States. Federal Court Management Statistics – Profile at 72 (September

30, 2017). The numbers for weighted filings prove similar. Each judge in the

Northern District of Texas had weighted filings of 539, for the 25th highest total in

the United States. Profile at 34. For the District of Montana, each judge faced on

average weighted filings of 383, for the 56th highest total in the United States.

Profile at 72. Despite these discrepancies in total cases, the District of Montana

managed to rank 6th in the United States in terms of trials completed while the

Northern District of Texas lagged in 32nd place. Profile at 34 and 72. The Court

declines to speculate on the timeline for resolution of CFPB's pending action. The

Court anticipates no delay, however, in resolving expeditiously the underlying

issues.

Think Finance's claims regarding the potential for mootness similarly prove

unavailing. CFPB seeks injunctive relief. (Doc. 1 at 31.) Think Finance

acknowledges the potential impact of injunctive relief.  Think Finance suggests

that injunctive relief could "impair the ability of [Think Finance] to operate its

business." (Doc. 5 at 16.)

Think Finance argues that any impairment could "mean the difference

between [Think Finance] liquidating and effecting a reorganization." *Id*. Think Finance thereby acknowledges that meaningful remedies remain even if Think Finance's estate were to be exhausted in the bankruptcy proceeding. Think Finance additionally concedes that the Bankruptcy Court would be capable of estimating CFPB's claims. The Bankruptcy Court's ability to estimate CFPB's claims suggests that such resolution would not render moot CFPB's monetary remedies. Think Finance has failed to demonstrate that the interest of justice would be served by transferring CFPB's regulatory action to the Bankruptcy Court.

### 2. Convenience of the Parties

Think Finance conceded at oral argument that its strongest argument regarding convenience of the parties rests on the availability of four former executives who reside in the Northern District of Texas. (*See* Doc. 5-2 at 4.) CFPB counters that these employees possess indemnification agreements with Think Finance that provide the ability for such witnesses to appear in this forum. Think Finance did not contest this point directly. Counsel for Think Finance noted at oral argument that he personally knew of only one such agreement.

Montana is home to Plain Green, one of the Tribal Lenders implicated in this action. Montana is home to 1,900 consumers who obtained allegedly void loans that comprise the subject of CFPB's Complaint. CFPB argues that Montana stands alone among the sixteen states where consumers of the allegedly void loans reside

due to the presence of the one Tribal Lender. (Doc. 13 at 11-12.) Think Finance dismisses the presence of these Montana consumers as making Montana's interest "no greater than any of the other states" where the consumers of the three Tribal Lenders are located. (Doc. 15 at 12.)

CFPB did not file this action in Oklahoma or Louisiana where the other Tribal Lenders are located. CFPB filed this action in the District of Montana. Moreover, it is not just the location of the consumer that establishes Montana's interest and weighs against Think Finance's assertion of convenience. A Tribal Lender and the corresponding potential witnesses associated with that Tribal Lender also reside within the District of Montana. The presence of a Tribal Lender within the District of Montana distinguishes this case from *CFPB v. Golden Valley Lending, Inc.*, No. 17-C-3155, 2017 WL 3970514 (N.D. Ill. Sept. 8, 2017).

Think Finance cited *Golden Valley Lending* in its reply brief to suggest that Montana's interest differs in no material way from any of the sixteen other states in which the borrowers live. The district court in *Golden Valley Lending* analyzed a lender's motion to transfer under 28 U. S. C. § 1404. *Id*. at *2. The presence of alleged victims did not establish that the Northern District of Illinois provided the more convenient forum when the CFPB's Complaint identified potential victims in sixteen separate states. *Id*. at *5-6. CFPB filed the action in the Northern District of Illinois. Golden Valley Lending operated a call center in Kansas. The presence of a

California tribal lender failed to support CFPB's convenience argument for the Northern District of Illinois. The district court agreed with the lender that moving the case to Kansas would serve the convenience of the parties. *Golden Valley Lending*, 2017 WL 3970514, at *6.

Think Finance further argues that potential witnesses from Plain Green may reside outside the subpoena power of this Court due to concerns of tribal sovereign immunity. *See Matt v. United States,* CV-15-28-GF-BMM, 2015 WL 13560169, at *4 (D. Mont. Oct. 6, 2015). This case involves three Tribal Lenders located in Montana, Oklahoma, and Louisiana. (Doc. 1 at 4-5.) Think Finance conceded at oral argument that this potential impediment could exist, too, in the Northern District of Texas.

Furthermore, the power of a federal court to subpoena witnesses to appear at a trial, hearing, or deposition is generally limited to 100 miles of where "the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 35(c)(1)(A). Where the subject of the subpoena is "a party or a party's officer," or where the subject would not "incur substantial expense" to attend a trial, the subpoena power extends throughout the state where the person "resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 35(c)(1)(B). The three Tribal Lenders identified in CFPB's Complaint are located in Oklahoma, Louisiana, and Montana. (Doc. 1 at 4-5.) All potential tribal witnesses would

therefore sit "beyond the subpoena power" of the Bankruptcy Court.

Think Finance contended at oral argument that the question before the Court is which venue serves "best" for resolution of this case. "No requirement exists that the chosen venue represents the best choice." *W. Org. of Resource Councils v. U.S. Bureau of Land Mgt.*, CV 16-21-GF-BMM, 2017 WL 374705, at *4 (D. Mont. Jan. 25, 2017) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). The Court determines that the convenience of a few indemnified witnesses formerly employed by Think Finance in Dallas, Texas fails to establish that the Northern District of Texas would serve as the best venue to resolve this case. The Court declines to exercise its discretion pursuant to § 1412 to transfer this case to the Northern District of Texas.

### III.  ORDER

Accordingly, **IT IS HEREBY ORDERED**, that Defendant's Motion to Transfer Venue (Doc. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that the undersigned will conduct a Telephonic Scheduling Conference on **Tuesday, February 13, at 3:30 p.m.**  The Court will contact the parties with the call-in number.

DATED this 6th day of February, 2018.

Brian Morris
United States District Court Judge