VANESSA BUCHKO
BENJAMIN VAUGHN
ADRIENNE WARRELL
KRISTIN BATEMAN
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Buchko): 202-435-9593
Fax: 202-435-7722
E-mail: Vanessa.Buchko@cfpb.gov

ATTORNEYS FOR PLAINTIFF
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Think Finance, LLC, formerly known as Think Finance, Inc., Think Finance SPV, LLC, Financial U, LLC, TC Loan Service, LLC, Tailwind Marketing, LLC, TC Administrative Services, LLC, and TC Decision Sciences, LLC,<br><br>Defendants. | Case No. 4:17-cv-00127-BMM<br><br>**PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANTS' MOTION TO DISMISS** |

**TABLE OF CONTENTS**


I. INTRODUCTION ....................................................................................1

II. STANDARD OF REVIEW ....................................................................2

III. ARGUMENTS & AUTHORITIES ........................................................3

A. The Bureau's allegations establish violations of the CFPA. ............................3

1. The complaint states a claim for unfairness. ........................................3

2. The complaint states a claim for deception. .........................................5

3. The complaint states a claim for abusiveness. .....................................9

4. The complaint states a claim for substantial assistance. ........................9

5. The Bureau adequately alleges that Think Finance, LLC and its subsidiaries operated as a common enterprise under the CFPA. ........10

6. The Bureau adequately alleges consumers in the Subject States had no obligation to repay Think's loans. ..........................................12

B. The Court may exercise personal jurisdiction over SPV. .............................14

1. SPV is subject to personal jurisdiction as the alter ego of Think Finance, LLC. ..........................................................................14

2. Exercising personal jurisdiction over SPV is consistent with due process. ..........................................................................17

C. The statute of limitations for the Bureau's claims is the same for Think Finance, LLC and its subsidiaries. .........................................................19

D. The TLEs are not necessary and indispensable parties under Rule 19. .........20

E. The Bureau does not seek to enforce state law or establish a usury limit......24

F. The Bureau can enforce the CFPA's prohibition on unfair, deceptive, and abusive practices without first "declaring" particular conduct unlawful. .....26

G. Think's constitutional challenge to the Bureau does not warrant dismissal. .28

IV. CONCLUSION ..........................................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO, Local 1647 v. FLRA*,
388 F.3d 405 (3d Cir. 2004) ........................................................................32
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009). ....................................................................................2
*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007). ....................................................................................2
*Boutilier v. INS*,
387 U.S. 118 (1967) ....................................................................................28
*Brazil v. Dell*,
No. 07-1700, 2007 WL 2255296 (N.D. Cal. Aug. 3, 2007).................................14
*Brown v. Kinross Gold U.S.A., Inc.*,
531 F.Supp.2d 1234 (D. Nev. 2008) ...............................................................20
*Cal. Sansome Co. v. U.S. Gypsum*,
55 F.3d 1402 (9th Cir. 1995)..........................................................................19
*CFPB v. All American Check Cashing, Inc.*,
No. 16-356 (S.D. Miss. July 15, 2016) (ECF No. 24)...........................................7
*CFPB v. All American Check Cashing, Inc.*,
No. 16-356 (S.D. Miss. Mar. 21, 2018) (ECF No. 236).......................................31
*CFPB v. CashCall, Inc.*,
No. 15-7522, 2015 WL 9591569 (C.D. Cal. Dec. 30, 2015) ..............................25
*CFPB v. CashCall, Inc.*,
No. 15-7522, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016) ....... 6, 12, 13, 28, 31
*CFPB v. D&D Mktg.*,
No. 15-9692, 2017 WL 5974248 (C.D. Cal. Mar. 21, 2017)..............................27
*CFPB v. D&D Mktg.*,
No. 15-9692, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016)...................... 7, 9, 31
*CFPB v. Frederick J. Hanna*,
114 F.Supp.3d 1342 (N.D. Ga. 2015) ...............................................................7
*CFPB v. Future Income Payments, LLC*,
252 F.Supp.3d 961 (C.D. Cal. 2017)................................................................31
*CFPB v. Gordon*,
819 F.3d 1179 (9th Cir. 2016)........................................................... 5, 6, 11, 30
*CFPB v. Great Plains Lending, LLC*,
846 F.3d 1049 (9th Cir. 2017)........................................................................23
*CFPB v. ITT Educ. Servs.*,
219 F.Supp.3d 878 (S.D. Ind. 2015) ...........................................................9, 31

*CFPB v. Morgan Drexen, Inc.*,
60 F.Supp.3d 1082 (C.D. Cal. 2014) ... 31
*CFPB v. Nationwide Biweekly Admin., Inc.*,
No. 15-2106, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017) ... 31
*CFPB v. Navient Corp.*,
No. 17-101, 2017 WL 3380530 (M.D. Penn. Aug. 4, 2017) ... 27, 31
*CFPB v. NDG Fin. Corp.*,
No. 15-5211, 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) ... 5, 6, 9, 12, 25
*CFPB v. Prime Mktg. Holdings, LLC*,
No. 16-7111, 2016 WL 10516097 (C.D. Cal. Nov. 15, 2016) ... 7
*CFPB v. Seila Law, LLC*,
No. 17-01081, 2017 WL 6536586 (C.D. Cal. Aug. 25, 2017) ... 31
*CFPB v. TCF Nat'l Bank*,
No. 17-0166 (D. Minn. Sept. 8, 2017) (ECF No. 89) ... 31
*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142, 159 (2012) ... 27
*Conner v. Burford*,
848 F.2d 1441, 1459 (9th Cir. 1988) ... 23, 24
*Davis v. Am. Family Mut. Ins. Co.*,
861 F.2d 1159 (9th Cir. 1988) ... 17
*Davis v. HSBC Bank Nev.*,
691 F.3d 1152 (9th Cir. 2012) ... 4
*Dawavendewa v. Salt River Project Agricultural Improvement and Power District*,
276 F.3d 1150 (9th Cir. 2002) ... 22
*DCS Sanitation Mgmt., Inc. v. Castillo*,
435 F.3d 892 (8th Cir. 2006) ... 14
*Dillon v. BMO Harris Bank, N.A.*,
16 F.Supp.3d 605 (M.D.N.C. 2014) ... 21, 22
*Easter v. American West Fin.*,
381 F.3d 948 (9th Cir. 2004) ... 18
*Ebeid ex rel. United States v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) ... 8
*EEOC v. Peabody W. Coal Co.*,
400 F.3d 774 (9th Cir. 2005) ... 23
*Floersheim v. FTC*,
411 F.2d 874 (9th Cir. 1969) ... 6
*Flynt Distrib. Co. v. Harvey*,
734 F.2d 1389 (9th Cir. 1984) ... 16, 20
*Friesen v. Ace Doran Hauling & Rigging, Inc.*,
No. 12-134, 2013 WL 5965917 (D. Mont. Nov. 8, 2013) ... 16, 17

*FTC v. Cyberspace.Com LLC*,
453 F.3d 1196 (9th Cir. 2006) ..................................................................6
*FTC v. Grant Connect, LLC*,
827 F.Supp.2d 1199 (D. Nev. 2011) ..................................................................10
*FTC v. Grant Connect, LLC*,
763 F.3d 1094 (9th Cir. 2014) ..................................................................11
*FTC v. IFC Credit Corp.*,
543 F.Supp.2d 925 (N.D. Ill. 2008)..................................................................4
*FTC v. Network Servs. Depot, Inc.*,
617 F.3d 1127 (9th Cir. 2010) ..................................................................11
*FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461 (S.D.N.Y. 2014)………….............. 11
*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .................................................................. 2, 3, 19
*Humphrey's Executor v. United States*,
295 U.S. 602 (1935) ..................................................................32
*King v. Najm*,
No. 08-4164, 2010 WL 11519552 (C.D. Cal. Apr. 19, 2010) ............................24
*Lopez v. Fed. Nat. Mortg. Ass'n*,
No. 13-04782, 2013 WL 7098634 (C.D. Cal. Oct. 8, 2013)..............................21
*Madden v. Midland Funding LLC*,
786 F.3d 246 (2d Cir. 2015) ..................................................................25
*Marquette National Bank v. First of Omaha Service Corp.*,
439 U.S. 299 (1978) ..................................................................14
*Newell v. Sauser*,
79 F.3d 115, 117 (9th Cir. 1996)..................................................................27
*NLRB v. Bell Aerospace*,
416 U.S. 267, 293 (1974) ..................................................................27
*Odom v. Microsoft Corp.*,
486 F.3d 541, 553 (9th Cir. 2007)..................................................................7
*Office of the Attorney Gen. v. Berger Law Grp., P.A.*,
No. 14-1825, 2015 WL 5922933 (M.D. Fla. Oct. 9, 2015) ................................12
*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*,
769 F.3d 105, 115 (2d Cir. 2014)..................................................................13
*P.F. Collier & Son Corp. v. FTC*,
427 F.2d 261, 267 (6th Cir. 1970)..................................................................11
*Pennsylvania v. Think Fin., Inc.*,
No. 14-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016). ..................................22
*Pennsylvania v. Think Fin., Inc.*,
No. 14-7139, 2018 WL 637656 (E.D. Pa. Jan. 31, 2018)..................................18

*PHH Corp. v. CFPB*,
881 F.3d 75 (D.C. Cir. 2018) (en banc) .................................................... 31, 32
*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015)..........................................................................14
*Seeger v. AFNI, Inc.*,
548 F.3d 1107 (7th Cir. 2008)..........................................................................25
*Shermoen v. United States*,
982 F.2d 1312 (9th Cir.1992)...........................................................................22
*SOS Co. v. E-Collar Techs., Inc.*,
No. 16-9667, 2017 WL 5714716 (C.D. Cal. Oct. 17, 2017)..............................20
*State of Washington v. The Geo Group Inc.*,
No.17-5806, 2018 WL 1963792 (W.D. Wash. Apr. 26, 2018)...........................24
*Ubaldi v. SLM Corp.*,
No. 11-1320, 2013 WL 4015776 (N.D. Cal. Aug. 5, 2013)...............................12
*United Brotherhood of Carpenters and Joiners of Am. Local 586 v. NLRB*,
540 F.3d 957, 962 (9th Cir. 2008).....................................................................26
*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
245 F.3d 1048 (9th Cir. 2001)............................................................................8
*United States v. Bowen*,
172 F.3d 682 (9th Cir. 1999)........................................................................ 20, 21
*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954, 960, 969 (9th Cir. 2010)............................................................19
*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)............................................................................8
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982) ........................................................................................28
*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006)...........................................................................17

**Statutes**

12 U.S.C. § 5302..............................................................................................32
12 U.S.C. § 5481(6) .........................................................................................10
12 U.S.C. § 5481(14)........................................................................................26
12 U.S.C. § 5491(c) .........................................................................................29
12 U.S.C. § 5497(a) .........................................................................................32
12 U.S.C. § 5531(a). .................................................................................. 25, 26
12 U.S.C. § 5531(b) .........................................................................................26
12 U.S.C. § 5531(c). ........................................................................................3, 27
12 U.S.C. § 5531(d). ........................................................................................9, 27

12 U.S.C. § 5536(a) .......... 10, 25
12 U.S.C. § 5564(a). .......... 26
15 U.S.C. § 45(a) .......... 27
5 U.S.C. §§ 3345-3349d .......... 29

**Rules**

Mont. R. Civ. P. 4(B)(1) .......... 16

**Other Authorities**

Restatement (Second) of Conflict Laws §§ 187,188 .......... 13

# INDEX OF EXHIBITS

Exhibit 1 Proof of Claim Form, United States Bankruptcy Court for the - Northern District of Texas. Case No. 17-33965. Creditor: GPL Servicing, Ltd. Debtor: Think Finance, SPV, LLC.

Addendum to Proof of Claim of GPL Servicing, Ltd.

Exhibit A: Fourth Amended and Restated Guaranty and Security Agreement, dated as of April 2, 2013 (the "GSA")

Exhibit B: Administrative Agency Agreement, dated as of July 17, 2016 (the "AAA")

Exhibit 2 Declaration of Barney C. Briggs, *In re Think Finance, LLC, et al*, No. 17-33964, (Bankr. N.D. Tx. Filed Oct. 23, 2017) (ECF No. 12).

Exhibit 3 Emergency Motion of the Debtors and Debtors in Possession for Entry of an Order Directing Joint Administration of Their Related Chapter 11 Cases, *In re Think Finance, LLC, et al*, No. 17-33964, (Bankr. N.D. Tx. Filed Oct. 23, 2017) (ECF No. 2).

Exhibit 4 Declaration of Eric Blankenstein in Support of Plaintiff's Memorandum Opposing Defendants' Motion to Dismiss

## I. INTRODUCTION

For years, Defendants (collectively, Think Finance or Think) arranged to make high-cost, small-dollar loans over the internet using companies nominally operated by Native American Tribes. Many of those loans carried interest rates up to 450%. In seventeen states (Subject States), the loans were void or borrowers had a limited obligation to repay because the loans were usurious, made without proper licensure, or both. Despite this, Think collected on the loans and falsely told consumers in those states that they had to repay. Demanding and collecting payments these consumers did not owe was deceptive, unfair, and abusive, in violation of federal law.

Think Finance was the true lender in this scheme to originate and collect on void loans. Think, not the Tribal Lending Entities (Great Plains Lending, LLC, Plain Green Lending, LLC and MobiLoans, LLC (collectively, the TLEs)), held most of the financial risk and reaped most of the profit. FAC ¶¶ 71-78. Think determined the frequency and scope of the TLEs' marketing campaigns, handled underwriting, and controlled the algorithm behind the loan origination software. FAC ¶¶ 63-70. Think also performed all critical business functions for the lending operations, including hosting the websites where consumers applied for loans, operating the servicing platform, working with banks to fund the loans, collecting

payments, and overseeing collection of delinquent loans. FAC ¶¶ 53-54. The TLEs' involvement was nominal.

Think's Motion to Dismiss the First Amended Complaint (FAC) raises legal arguments regarding the Bureau's authority that other courts have already rejected. Further, on the substantive merits, other courts have already approved claims substantially identical to the ones alleged here. That is, Think violated the Consumer Financial Protection Act's (CFPA) prohibition against unfair, deceptive, and abusive acts or practices by falsely representing to consumers that they owed money they did not owe and by collecting on loans that were void or that consumers had a limited obligation to repay.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, the Bureau does not have to prove a "probability" of success. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, it is required only to allege facts that "raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Bureau's FAC meets that standard.

To survive a motion to dismiss for lack of personal jurisdiction, the Bureau need only make a prima facie showing of jurisdiction. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). The court may rely on matters outside the pleadings and must resolve all disputed facts in favor of

the plaintiff. *See id.*at 1129-30.

## III. ARGUMENTS & AUTHORITIES

### A. The Bureau's allegations establish violations of the CFPA.

The Bureau alleges that Defendants violated the CFPA's prohibition on deceptive, unfair, and abusive acts and practices by misrepresenting that consumers owed amounts they did not owe and by collecting those amounts. Think also substantially assisted the TLEs and debt collectors Capital Management Services L.P. (CMS) and Yessio, LLC (Yessio) in engaging in this same conduct. To defeat the Motion to Dismiss, the Bureau must have plausibly alleged these violations, and the FAC meets this requirement.

#### 1. The complaint states a claim for unfairness.

An act or practice is unfair if it: (1) causes substantial injury to consumers, (2) that is not reasonably avoidable, and which (3) is not outweighed by countervailing benefits to consumers or competition. 12 U.S.C. § 5531(c). The Bureau's allegations satisfy these elements.

First, Think caused substantial injury by taking millions of dollars from consumers that they were not obligated to pay. FAC ¶¶ 129-30, 144. Second, consumers could not reasonably avoid this harm because Think, the TLEs, CMS, and Yessio misrepresented consumers' obligation to repay the loans and consumers were unlikely to know that state law rendered the loans void. FAC ¶

135-36, 145. Consumers are not required to conduct extensive legal analysis or investigation before taking out a loan—the test is whether the consumer could *reasonably* avoid the harm, not whether the consumer could have conceivably uncovered potential problems with the loan. *See Davis v. HSBC Bank Nev.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (to reasonably avoid harm consumers must "have reason to anticipate the impending harm and the means to avoid it"). In *Davis*, the court held that a consumer could have reasonably avoided the harm—paying an annual fee on a credit card—by reading the disclosures. *Id.* at 1169. Here, consumers who took out a loan from the TLEs could not avoid the harm by reading disclosures or loan agreements because none of them disclosed the fact that the contracts were void.

Think contends that consumers could have avoided injury by not entering into the loans. Mem. at 29. But this incorrectly assumes that the unfair practice occurred at origination instead of collection. By the time Think engaged in its unfair collection practices, the consumers had *already* entered into their loans and could not reasonably avoid the harm. Moreover, Think's own cited authority recognizes that consumers can't avoid harm where a company's communications and contracts were designed to hide key features from consumers. *See FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 948 (N.D. Ill. 2008). Here, Think

misrepresented consumers' obligation to repay the loans and failed to disclose that it had no legal right to collect the loans. FAC ¶¶ 135-36, 138-39, 145.

Third, the harm was not outweighed by benefits to consumers or competition. FAC ¶¶ 146-148. Collecting on void loans provides no benefit to consumers. *See CFPB v. NDG Fin. Corp.*, No. 15-5211, 2016 WL 7188792, at *13 (S.D.N.Y. Dec. 2, 2016), *reconsideration denied*, 2016 WL 7742784 (S.D.N.Y. Dec. 19, 2016) ("Losing money they are otherwise entitled to keep provides consumers no conceivable benefit…"). In addition, lending operations like Think's harm competition because lenders who comply with state and federal law—and thus incur additional costs for licensing and compliance and charge lower interest rates to consumers—are at an economic disadvantage. Think argues the Bureau does not quantify the benefits that the loan products provide borrowers, Mem. at 30, but this challenge to the veracity of the Bureau's allegations is inappropriate for a motion to dismiss. Moreover, the appropriate question is whether *collecting* payments that consumers do not owe provides any countervailing benefits.

**2. The complaint states a claim for deception.**

An act or practice is deceptive if it makes: (1) material misrepresentations that are (2) likely to mislead consumers, who are (3) acting reasonably under the circumstances. *CFPB v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016). The Bureau adequately alleges that Think told consumers, impliedly and expressly, that they

had a legal obligation to pay Think money when, in fact, they did not. FAC ¶¶ 135-39. These misrepresentations are material because they are likely to influence consumers' choices about repayment, including whether and when to repay. *See FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (misrepresentations are material if they are "likely to affect [consumers'] choice of, or conduct regarding, a product"). Instructing consumers to pay back loans and then collecting payments is likely to mislead reasonable consumers to believe that the loans are valid.[1] *See Floersheim v. FTC*, 411 F.2d 874, 877 (9th Cir. 1969) (upholding FTC's finding that implications in debt-collection notices were deceptive). Indeed, two courts have held similar allegations state a claim for deception under the CFPA. *CFPB v. CashCall, Inc*., No. 15-7522, 2016 WL 4820635, at *10, *12, n.11 (C.D. Cal. Aug. 31, 2016), *appeal docketed*, No. 18-55479; *NDG*, 2016 WL 7188792 at *14.

Think argues that the Bureau is obligated to plead its deception claim under Rule 9(b). The Ninth Circuit has not decided whether deception claims under the Federal Trade Commission (FTC) Act or the CFPA must satisfy Rule 9(b).

---

[1] Think contends that its actions can't be deceptive because they were not directed to consumers. Mem. at 27. This argument ignores the Bureau's allegations, which must be accepted as true at this stage. FAC ¶¶ 87-100. Moreover, the case Think cites, *Gordon*, 819 F.3d at 1192, does not support that proposition. In *Gordon*, an individual was liable for the corporation's marketing activities because he controlled the operation. *Id.* at 1193-94. Given the Bureau's allegations regarding Think's direction and control of the TLEs, *Gordon* supports the Bureau's claims.

Numerous courts have held that Rule 9(b) does not apply to deception claims because fraud claims require different elements than deception claims and because consumer protection statutes carry particular remedial purposes. *See, e.g.*, *CFPB v. D&D Mktg.*, No. 2:15-09692, 2016 WL 8849698, at *10-11 (C.D. Cal. Nov. 17, 2016) (declining to apply Rule 9(b) to CFPA deception claims); *CFPB v. All American Check Cashing, Inc.*, No. 3:16-CV-00356-WHB-JCG at 6 (S.D. Miss. July 15, 2016) (ECF No. 24) (Rule 9(b) does not apply to CFPA deception claims); *CFPB v. Frederick J. Hanna*, 114 F. Supp. 3d 1342, 1373 (N.D. Ga. 2015) (applying Rule 9(b) to CFPA would be "inconsistent with the remedial nature of consumer protection statutes"). A few courts have held otherwise. *See, e.g.*, *CFPB v. Prime Mktg. Holdings, LLC*, No. 16-07111, 2016 WL 10516097, at *6 (C.D. Cal. Nov. 15, 2016). But given the distinctions between a fraud claim and a CFPA deception claim, and the CFPA's remedial purposes, this Court should hold that deception claims under the CFPA do not sound in fraud and therefore need not satisfy Rule 9(b).

Even if Rule 9(b) applies, the Bureau's allegations are sufficient because the FAC identifies the circumstances of the alleged fraud so that Defendants can prepare an answer. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). A plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id*.

Plaintiff must also allege why the statements are false or misleading. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). But the Bureau does not need to allege every instance of wrongdoing over many years. *See United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001). And if Rule 9(b) applies at all, it applies only to those facts that constitute fraudulent conduct; allegations not grounded in fraud need not be pled with particularity. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003) (reversing dismissal of state-law deception claims and distinguishing allegations grounded in fraud—and subject to Rule 9(b)—from deception allegations not grounded in fraud).

The Bureau alleges that Think took money from consumers' accounts, FAC ¶¶ 84, 90-91, and drafted and sent notices to consumers advising them of the amounts and due dates of payments, FAC ¶¶ 87-89, 92, 96-97. The Bureau alleged why these statements were false or misleading, FAC ¶¶ 125-26, and alleged the time period in which these services were provided. FAC ¶¶ 53-54. Furthermore, the FAC describes specific examples of deceptive communications and identifies a borrower who received a misleading communication. FAC ¶¶ 89, 92. The Bureau alleges details about Think's role in responding to consumer complaints and provides an example of a complaint response that Think sent to a consumer stating that the loan was governed by Tribal law and implying that the loan was valid.

FAC ¶¶ 99-100. These statements were misleading because consumers did not actually owe the amounts that Think said (or implied) they did. Think needs no other information to answer these allegations.

**3. The complaint states a claim for abusiveness.**

An act or practice is abusive if it: (1) takes unreasonable advantage of (2) consumers' lack of understanding of a product or service's material risks, costs, or conditions. 12 U.S.C. § 5531(d)(2)(A). Here, the Bureau alleges borrowers lacked an understanding of the laws applicable to Think's loans and how those laws affected repayment obligations. FAC ¶¶ 135-39, 153-54. Think profited from consumers' lack of understanding by collecting payments it had no right to collect and, in so doing, took unreasonable advantage of borrowers' lack of understanding that they had no obligation to repay the loans. *See D&D Mktg.*, 2016 WL 8849698, at *10; *NDG*, 2016 WL 7188792 at *15; *CFPB v. ITT Educ. Servs.*, 219 F. Supp. 3d 878, 918 (S.D. Ind. 2015). The Bureau has therefore alleged facts that adequately plead a claim of abusive practices.

**4. The complaint states a claim for substantial assistance.**

The Bureau adequately alleges that Think is liable for substantially assisting the TLEs, CMS, and Yessio in unlawfully collecting payments from consumers in the Subject States. The CFPA renders it illegal for "any person to knowingly or recklessly provide substantial assistance to a covered person or service provider in

violation of the provisions of section 5531 of this title," which prohibits unfair, deceptive, and abusive acts and practices. 12 U.S.C. § 5536(a)(3). The Bureau describes the substantial services that Think provided to the TLEs, CMS, and Yessio in connection with those entities' unlawful collection of debts that consumers did not actually owe, FAC ¶¶ 31-43, 53-54, 57-70 , and alleges that Think knew the loans were void, FAC ¶¶ 101-07. Nonetheless, Think claims that some of its subsidiaries provided no assistance to the TLEs. Mem. at 31. The argument ignores the Bureau's allegations regarding each subsidiary's role in the business, FAC ¶¶ 13-27, and its allegations that Defendants acted as a common enterprise. FAC ¶¶ 45-49.[2]

**5. The Bureau adequately alleges that Think Finance, LLC and its subsidiaries operated as a common enterprise under the CFPA.**

Think does not dispute that Think Finance, LLC operated as a common enterprise with the other Defendants, its wholly owned subsidiaries; indeed, it would be difficult to deny this allegation given the interconnectedness of the businesses. FAC ¶¶ 13-27, 45-48; *see FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1215-18 (D. Nev. 2011), *aff'd in relevant part*, 763 F.3d 1094 (9th Cir. 2014). Because Think operated as a common enterprise, Think Finance, LLC and

[2] Think's claim that the Bureau did not plead that TLEs are "covered persons," Mem. at 32, is incorrect. *See* FAC ¶ 36 (alleging that the TLEs are "covered person[s]" under the CFPA, 12 U.S.C. 5481(6)(A)); *see also* Section III.D, *infra*.

each of its subsidiaries may be held jointly-and-severally liable for the unlawful conduct of the enterprise. *FTC v. Grant Connect*, 763 F.3d 1094, 1105 (9th Cir. 2014) ("Where corporate entities operate together as a common enterprise, each may be liable for the deceptive acts and practices of the others."). Think's reliance on precedent involving "group pleading" is therefore misplaced. *See FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2014) (common enterprise allegations are exempt from group pleading rules).

Think argues that the CFPA does not permit common enterprise liability because the statute does not specifically reference it. But the FTC Act does not specifically mention common enterprise liability either, and it is well established that such liability exists under that statute. *See, e.g.*, *FTC v. Network Servs. Depot, Inc*., 617 F.3d 1127, 1142–43 (9th Cir. 2010) (upholding a constructive trust issued against common enterprise engaged in deception). Where the public interest is involved, courts impose common enterprise liability to ensure effective enforcement where "the corporate device" could otherwise "be used to circumvent the policy of the statute." *P.F. Collier & Son Corp. v. FTC*, 427 F.2d 261, 267 (6th Cir. 1970).

The same principles apply under the CFPA. The Ninth Circuit has indicated that the FTC Act should inform interpretation of the CFPA, given the similarities in the two statutes. *See Gordon*, 819 F.3d at 1192-93, n.7-8, 1195. And courts

already have looked to FTC Act precedent to find common enterprise liability under the CFPA. *See NDG*, 2016 WL 7188792, at *16-17; *Office of the Attorney Gen. v. Berger Law Grp., P.A.*, No. 14-1825, 2015 WL 5922933, at *2 (M.D. Fla. Oct. 9, 2015). While one district court has held that common enterprise liability does not exist under the CFPA—in a state's suit against Think Finance to which the Bureau was not a party—that decision has been rejected by another court that found that "the *Think Finance* court did not attempt to explain its reasoning." *NDG*, 2016 WL 7188792 at *16.

**6. The Bureau adequately alleges consumers in the Subject States had no obligation to repay Think's loans.**

Think assumes, without much analysis, that Tribal law applies to these loans. Mem. at 8-9. But, as the Bureau alleges, Think controlled the lending operation, and the Native American Tribes affiliated with the TLEs had no substantial relationship to either the loans or the parties to the loan transactions. FAC ¶¶ 63-70, 82. Accordingly, there is no reasonable basis to choose Tribal law as the governing law, and the Tribal choice-of-law provisions in the loan agreements were ineffective. *See, e.g.*, *Ubaldi v. SLM Corp.*, No. 11-1320, 2013 WL 4015776, at *6 (N.D. Cal. Aug. 5, 2013) ("If Plaintiffs' de facto lender allegations are true, then Oklahoma does not have a substantial relationship to Sallie Mae or Plaintiffs or the loans."); *CashCall*, 2016 WL 4820635, at *7 (declining to give effect to contractual choice-of-law provision where, "[i]n light of

CashCall's status as the true lender ... the [tribe] does not have a substantial relationship to the parties or the transactions."); *see also* Restatement (Second) of Conflict of Laws ("Restatement") § 187(2)(a). Consumers signed loan contracts in, received loan funds in, and made repayments from their states of residence. FAC ¶¶ 81-82, 86, 90; *see Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 115 (2d Cir. 2014). Thus, the loan agreements are governed by the law of the states in which the consumers resided. *See* Restatement § 188. Under those laws in the Subject States, consumers had limited or no obligation to repay their loans. FAC ¶¶ 108-127 (alleging that consumers' loans were uncollectible).

Moreover, enforcing the choice of Tribal law in the agreements would contravene the fundamental public polices of the Subject States, which make the loans void. *See* Restatement § 187(2)(b); Restatement § 187 cmt. g ("[A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal.…"); FAC ¶¶ 115, 119 (laws in the Subject States reflect strong public policy interests). Instead, the law of each Subject State applies because those states have the most significant relationship to the transaction and the parties (which here excludes the TLEs since Think is the true lender). *See* Restatement § 188(1). Under analogous circumstances, courts have invalidated the choice-of-law provisions. *See CashCall*, 2016 WL 4820635, at *7-8 (concluding application of

Tribal law would be contrary to fundamental policy of the Subject States, which have a materially greater interest); *Brazil v. Dell*, No. 07-1700, 2007 WL 2255296, *7 (N.D. Cal. Aug. 3, 2007) (striking Texas choice-of-law clause that violated California public policy); *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 897 (8th Cir. 2006) (striking Ohio choice-of-law clause that violated Nebraska public policy).[3]

**B. The Court may exercise personal jurisdiction over SPV.**

Think Finance SPV, LLC's ("SPV") Rule 12(b)(2) motion is meritless. SPV is an alter ego of Think Finance, LLC, and thus Think Finance, LLC's contacts with the forum can be imputed to SPV. Moreover, SPV's role in the Tribal lending operations is expressly aimed at Montana. On either basis, the Bureau has made a prima facie showing of personal jurisdiction.

**1. SPV is subject to personal jurisdiction as the alter ego of Think Finance, LLC.**

SPV is the alter ego of Think Finance, LLC and is therefore subject to personal jurisdiction in this Court. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015) (personal jurisdiction is imputed to alter egos). The alter ego test

[3] Think's citation to *Marquette National Bank v. First of Omaha Service Corp.*, 439 U.S. 299, 301 (1978), is inapposite. *Marquette* addressed whether the National Bank Act permitted national banks to charge out-of-state customers any interest rate allowed by the bank's home state. The National Bank Act has no application to this case.

requires a prima facie showing: (1) of "such unity of interest and ownership that the separate [entities] … no longer exist" and (2) that "failure to disregard [the entities' separateness] would result in fraud or injustice." *Id.* at 1073. The unity of interest and ownership prong envisions "pervasive control over the subsidiary," such as when a parent "dictates every facet of the subsidiary's business…." *Id.*

The Bureau alleges that SPV, like all of the subsidiaries, is wholly owned by Think Finance, LLC; has no independent offices, infrastructure, management, employees, or financial and contractual obligations; and conducts no business without the involvement and control of Think Finance, LLC. FAC ¶¶ 15, 45-48. The Guaranty and Security Agreement (GSA) among Think Finance, its subsidiaries, GPL Servicing (GPLS, the vehicle through which Think and others funded the TLEs), and Victory Park Capital (the primary investor in GPLS) is illustrative of Defendants' commingling of funds and liability for one another's debts.[4] The GSA states that SPV is nothing more than a financial pass through for Think Finance; it is "a special purpose vehicle organized *solely* for the purpose of" purchasing and holding shares in the TLEs' loans.[5] Because SPV serves as a mere conduit for Think Finance, LLC's provision of funds to the lending operations,

---

[4] *See* Ex. A to Ex. 1, the GSA, at 1 (describing SPV as a "Guarantor" to the agreement), at 41 (describing the failure of any Guarantor to pay GPLS as an "Event of Default").
[5] Ex. A to Ex. 1, at 1 (emphasis added).

SPV's assets are inescapably comingled with those of Think Finance, LLC and the other subsidiaries, which are not independently capitalized.[6] SPV plainly "exist[s] solely to service [Think Finance] and serve[s] only to compartmentalize the assets and liabilities associated with … running ... [the] business." *Friesen v. Ace Doran Hauling & Rigging, Inc.*, No. 12-134, 2013 WL 5965917, at *4 (D. Mont. Nov. 8, 2013). Accordingly, SPV and Think Finance, LLC share a unity of interest.

The second prong of the alter ego analysis is satisfied if "failure to disregard these separate entities would result in an unacceptably high possibility of injustice." *Id.* at *5. A prima facie alter ego finding is necessary to avoid injustice, where, as here, commonly owned and controlled companies transfer assets among themselves leaving certain entities "undercapitalized." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393–94 (9th Cir. 1984). SPV is the sole remaining holder of over $50 million in Participating Shares in GPLS. *See* Ex. 2 ¶ 25. This is a "significant source of revenue" for Think. *See id*. ¶ 16. Dismissing SPV from this suit could result in shielding the assets of the common enterprise from liability, which presents a grave risk of injustice.[7] Because SPV shares a unity of interest

---

[6] Ex. 2, Declaration of Barney C. Briggs, ¶ 16 ("a significant source of revenue of the Debtors [is]… a fixed rate of interest on the equity investment of Think SPV in GPLS.").

[7] By contrast, in Bankruptcy Court Think has emphasized the relatedness of its subsidiaries. Ex. 3, Emergency Motion of the Debtors and Debtors in Possession for Entry of an Order Directing Joint Administration of Their Related Chapter 11

and ownership with Think Finance, LLC, and because failing to disregard their corporate separateness would result in injustice, the Bureau has made a prima facie showing that this Court's personal jurisdiction over Think should be imputed to its alter ego, SPV. *See Friesen*, 2013 WL 5965917, at *4-6.

**2. Exercising personal jurisdiction over SPV is consistent with due process.**

Even if SPV were not Think Finance, LLC's alter ego, personal jurisdiction is proper under Montana's long arm statute, which is coterminous with the Due Process Clause. Mont. R. Civ. P. 4(B)(1); *see Davis v. Am. Family Mut. Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988). In the Ninth Circuit, specific personal jurisdiction comports with due process if: (1) the defendant purposefully directed activities to the forum, or purposefully availed itself of the privilege of conducting activities in the forum, (2) the claim arises out of the forum-related activities, and (3) jurisdiction comports with fair play and substantial justice. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006). The first prong may be satisfied by some combination of purposeful direction and purposeful availment. *Id.* at 1206.

---

Cases, *In re Think Finance, LLC, et al*, No. 17-33964, (Bankr. N.D. Tx. Filed Oct. 23, 2017) (ECF No. 2), at 6 ("Debtors' financial affairs and business operations are closely related.").

SPV purposefully directed its activities to Montana, one of the Subject States, through its participation in Think's unlawful scheme, and thereby caused harm in Montana. FAC ¶¶ 123, 145-48; Dkt. 17 at 19 ("Montana is home to 1,900 consumers who obtained allegedly void loans…."). In order to fund the scheme, SPV transferred funds to consumers through Plain Green, which is located in Montana. FAC ¶ 30. SPV also purposefully availed itself of the forum by benefiting from an income stream derived from Montana. *See Easter v. American West Fin.*, 381 F.3d 948, 960–61 (9th Cir. 2004) (finding purposeful availment of forum state by receiving payments from forum state residents albeit routed through third-party loan servicing companies). The Bureau's claims against SPV and the common enterprise arise out of these contacts with Montana, and the Bureau seeks recovery of funds that were illegally collected from Montana residents. *See id*. at 961.

Finally, Think bears the burden of proving that the exercise of jurisdiction would not "comport with fair play and substantial justice." *Id.* SPV has not produced this evidence. Indeed, SPV's role as an active collaborator in this scheme to target Montana residents "connects [it] 'to the forum in a meaningful way.'" *Pennsylvania v. Think Fin., Inc.*, No. 14-7139, 2018 WL 637656, at *5-6 (E.D. Pa. Jan. 31, 2018) (finding personal jurisdiction over investors GPLS and Victory Park

Capital). These facts sufficiently allege the minimum contacts for personal jurisdiction over SPV.[8]

**C. The statute of limitations for the Bureau's claims is the same for Think Finance, LLC and its subsidiaries.**

Think's statute of limitations argument is meritless. Mem. at 32-33. Dismissal based on statute of limitations is permissible only if the running of the statute is apparent on the face of the complaint. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960, 969 (9th Cir. 2010). Here, Think asserts that the statute of limitations for claims against the subsidiaries began running in 2012, but points to nothing in the pleadings that shows when the Bureau discovered the *subsidiaries'* violations—a fact that Think bears the burden to establish. *See Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) (defendant has the burden of proving the action is time barred).

Even if Think had met its burden to prove the Bureau's statute of limitations had run (it has not), the subsidiaries are bound by tolling agreements signed by Think Finance, Inc. (the predecessor to Think Finance, LLC) because the Bureau has plausibly alleged that the subsidiaries are the alter egos of Think Finance, LLC.

---

[8] If the Court finds an inadequate basis for personal jurisdiction over SPV, the Bureau respectfully requests jurisdictional discovery. *See Harris Rutsky*, 328 F.3d at 1135 (9th Cir. 2003) (finding abuse of discretion to deny motion for jurisdictional discovery when lower court possessed insufficient facts to determine if alter ego test was met).

"Since a Tolling Agreement is nothing but a contract governing the parties' respective rights regarding future litigation, all alter egos" of the signatories are "bound by it." *SOS Co. v. E-Collar Techs., Inc*., No. 16-9667, 2017 WL 5714716, at *5 (C.D. Cal. Oct. 17, 2017). And the alter egos would be bound by any judgment against Think Finance, LLC. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1241 (D. Nev. 2008) ("Where the alter ego doctrine applies, . . . the two corporations are treated as one for purposes of determining liability.") (internal citation and quotation omitted). For the same reasons described above regarding SPV, Think Finance, LLC and each of the subsidiaries have a complete unity of ownership, management, employees, and operations, plus entirely commingled financial interests and liabilities. FAC ¶¶ 13-27, 45-78.[9] Preserving these corporate forms would lead to an inequitable result because many of the Think entities are undercapitalized. *See Harvey*, 734 F.2d at 1394 (9th Cir. 1984). Accordingly, the subsidiaries are bound to the tolling agreement and bound to any judgment rendered against Think Finance, LLC.

**D. The TLEs are not necessary and indispensable parties under Rule 19.**

Dismissal under Rule 19 is warranted when an absent party is "necessary" and "indispensable." *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). A

[9] *See also* Ex. A to Ex. 1, the GSA, at 40 (section 6(w): "Think Finance shall cause each new subsidiary formed by Think Finance …to become a Guarantor").

necessary party is one that "claims an interest relating to the … action" and disposing of the action in the person's absence may "as a practical matter impair or impede the person's ability to protect that interest." *Id*. (quoting Fed. R. Civ. P. 19(a)(1)(B)). If a necessary party can't be joined, the court must next determine if it is indispensable—that is, "whether in 'equity and good conscience' the action can continue without the party." *Id*. (quoting Fed. R. Civ. P. 19(b)). Think argues that dismissal is required because the TLEs are both necessary and indispensable. This argument fails for six independent reasons.

First, the TLEs are not necessary because they do not actually claim an interest in this litigation. *Id.* at 689. "[U]nless the absent party has actually claimed it has a legally protected interest in the action,"—which the TLEs have not—it "cannot be deemed a necessary party under Rule 19." *Lopez v. Fed. Nat. Mortg. Ass'n*, No. 13-4782, 2013 WL 7098634, at *6 (C.D. Cal. Oct. 8, 2013).

Second, even if the TLEs claimed an interest, they still would not be necessary. Think argues that a contracting party is necessary to "litigation seeking to decimate that contract." Mem. at 20. A similar argument has already been rejected in *Dillon v. BMO Harris Bank, N.A.*, 16 F. Supp. 3d 605, 613 (M.D.N.C. 2014), a case against banks that facilitated tribally-affiliated lenders making loans in violation of state usury and federal racketeering laws. There, the court rejected the banks' argument that the non-party tribal businesses had to be joined because

their contractual interests could be impaired. *Id.* at 612-13. The court reasoned that lenders are not necessary parties if they are "joint tortfeasors" and the plaintiff seeks tort remedies, rather than rescission of contracts. *See id*. at 613. Here, the Bureau does not seek rescission of contracts, so joinder is not required.[10]

Third, an absent party is not necessary "if the absent party is adequately represented in the suit." *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir.1992). Adequate representation exists where a present party will "undoubtedly make all of the absent party's arguments," is "capable" and "willing" to do so, and the absent party will offer no "necessary element" to the proceedings. *Id*. (internal quotations omitted). Think's interests are aligned with the TLEs, and Think can adequately represent their interests, a finding previously reached regarding the same parties. *See Pennsylvania v. Think Fin., Inc.*, No. 14-7139, 2016 WL 183289, at *8 (E.D. Pa. Jan. 14, 2016). Think created, operated, and directed an internet lending scheme using the TLEs. FAC ¶¶ 84-93. Think provided all of the critical functions of the TLEs' businesses, FAC ¶¶ 53-54, and was the primary financial beneficiary of those businesses, FAC ¶¶ 71-78. Because the Bureau's claims

[10] Think relies on *Dawavendewa v. Salt River Project Agricultural Improvement and Power District*, but the plaintiff in that case sought injunctive relief that could only be effective if the tribe were bound by the litigation. *See* 276 F.3d 1150, 1155-56 (9th Cir. 2002). Here, none of the relief sought requires the TLEs to be parties.

challenge Think's business model, Think will raise every available defense of the model, and Think has identified no defense that can't be raised without the TLEs.

Fourth, even if the TLEs were necessary and not aligned with Think's interests, dismissal would not be warranted because the TLEs could be joined. Think contends that the TLEs are "immune from suit under the CFPA" because they are arms of tribes and therefore not "persons" subject to the Bureau's authority.[11] Mem. at 20. But this argument is inconsistent with the Ninth Circuit's reasoning in *CFPB v. Great Plains Lending, LLC*, which held that these same TLEs were "persons" subject to the Bureau's investigative authority. 846 F.3d 1049, 1050 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 555 (2017).[12]

Fifth, even if the Court concluded the TLEs are necessary and can't be joined, they are not indispensable because the Bureau's claims fall within the "public rights" exception to Rule 19. Necessary parties are not indispensable where public rights are "vindicated by restraining the unlawful actions of the defendant even though the restraint prevent[s] [] performance of [] contracts" because burdens on contractual rights "do not destroy the legal entitlements of the absent

[11] The TLEs would not have sovereign immunity from suit because "tribal sovereign immunity does not apply in suits brought by" a federal agency. *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005).

[12] At this stage, it is also unclear that the TLEs are actually arms of the tribes. *Cf. id.* at 1055 n.3 (finding a sufficient record only to support Tribes' interest in challenging the investigative demands).

parties." *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988) (citing *National Licorice Co. v. National Labor Relations Board*, 309 U.S. 350, 366 (1940)). Here, the Bureau's CFPA claims seek to vindicate public rights. *Cf. id.* (applying public rights exception to enforce environmental protection); *State of Washington v. The Geo Group Inc.*, No. 17-5806, 2018 WL 1963792, at *5 (W.D. Wash. Apr. 26, 2018) (applying public rights exception to claims arising under the state Minimum Wage Act). And these claims do not destroy the TLEs' legal entitlements; the Bureau seeks relief solely from Think and does not seek destruction of the TLEs' legal rights.

Sixth, the suit may proceed without the TLEs under the four-factor test in Rule 19(b). There is no prejudice to the TLEs here: the Bureau's claims do not seek contractual remedies, direct invalidation of the TLEs' contracts, or any relief from the TLEs. Because of that, the court can enter an adequate judgment between the existing parties. Whereas if the case is dismissed, there is no other forum for the Bureau's claims. *Cf. King v. Najm*, No. 08-4164, 2010 WL 11519552, at *2-3 (C.D. Cal. Apr. 19, 2010) ("Courts should be 'extra cautious' before dismissing a suit where no alternative forum is available to the plaintiff.").

**E. The Bureau does not seek to enforce state law or establish a usury limit.**

Despite Think's claims otherwise, the Bureau's allegations do not establish a usury limit, nor do they seek to enforce state law. The only two district courts to

have considered similar arguments have rejected them. *CFPB v. CashCall, Inc.*, No. 15-7522, 2015 WL 9591569 (C.D. Cal. Dec. 30, 2015), at *2; *NDG*, 2016 WL 7188792, at *18. As in *NDG* and *CashCall*, the Bureau is not "seeking to establish a usury limit. Instead, the Bureau is seeking to enforce a prohibition on collecting amounts that consumers do not owe." *CashCall*, 2015 WL 9591569, at *2.

Think also errs in contending that the Bureau's claims are not brought "under Federal law." Mem. at 12-14 (citing 12 U.S.C. § 5531(a)). The CFPA, a federal law, makes it unlawful for "any covered person or service provider … to engage in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). The fact that state law governs whether the loans are void does not mean that the Bureau is enforcing state law when charging defendants with collecting amounts that were not owed. *NDG*, 2016 WL 7188792, at *18; *CashCall*, 2015 WL 9591569, at *2. And, as the court in *NDG* explained: "Just as lying about committing a prior crime can constitute a separate offense of perjury, misrepresenting to consumers the legal status of an invalid loan agreement can constitute a separate violation of consumer protection law." 2016 WL 7188792, at *18. Indeed, it is hardly unusual for state law to govern the property rights that underlie violations of federal law. *See, e.g.*, *Madden v. Midland Funding LLC*, 786 F.3d 246, 254 (2d Cir. 2015) (attempting to collect interest beyond what state law permits may violate federal debt-collection law); *Seeger v. AFNI, Inc.*, 548 F.3d

1107, 1111-12 (7th Cir. 2008) (attempting to collect fee not authorized by state law violates federal debt-collection law); *United Brotherhood of Carpenters and Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 962 (9th Cir. 2008) ("a violation of these state rights will also be a violation of the [National Labor Relations Act].").

### F. The Bureau can enforce the CFPA's prohibition on unfair, deceptive, and abusive practices without first "declaring" particular conduct unlawful.

Think fares no better in contending that it can't be held liable here because the Bureau did not "declare" in advance, through rulemaking or adjudication, that collecting debt that consumers do not actually owe is unfair, deceptive, and abusive. Mem. at 15-18. The CFPA authorizes the Bureau to "commence a civil action against" any person that violates a federal consumer financial law, including the Act's prohibitions against unfair, deceptive, and abusive acts and practices. *Id.* §§ 5564(a), 5481(14). Nothing in these—or any other—provisions suggests that the Bureau can enforce the prohibition on unfair, deceptive, and abusive practices only if it first declares the practices unlawful in a rulemaking or administrative adjudication. Think suggests that 12 U.S.C. § 5531 "presumes" that the Bureau will "declare" particular conduct unlawful through rulemaking. Mem. at 12-13. Not so. That provision authorizes both rulemaking and enforcement, 12 U.S.C. §§ 5531(a), (b), and sets limits on the types of conduct the Bureau may "declare"

unfair and abusive, *id.* §§ 5531(c), (d). Think, "fail[s] to explain—or cite to any authority which would explain—why 'declare' must refer only to rulemaking and not litigation, and why it would be improper for the [Bureau] to declare something unlawful through litigation."[13] *CFPB v. Navient Corp.*, No. 17-101, 2017 WL 3380530, *7 (M.D. Penn. Aug. 4, 2017). The FTC, moreover, has enforced a similar prohibition, *see* 15 U.S.C. § 45(a)(1), for decades without declaring in advance every violation that is unfair or deceptive. *Id.* at *7. Unsurprisingly, the courts that have considered the issue agree that the CFPA "does not impose a requirement on the Bureau to engage in rulemaking before bringing an enforcement action" to address unfair, deceptive, and abusive conduct. *Id.* at *8; *CFPB v. D&D Mktg.*, No. 15-9692, 2017 WL 5974248, *5 (C.D. Cal. Mar. 21, 2017).

Nor does this action violate due process. While "due process requires fair notice of what conduct is prohibited," *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996), Think does not explain how the CFPA fails to provide fair notice that

[13] Instead, Think cites two inapposite Supreme Court cases. Mem. at 16. In *Christopher v. SmithKline Beecham Corp.*, the Court declined to defer to an agency's interpretation of a regulation that it announced for the first time in an enforcement proceeding. 567 U.S. 142, 159 (2012). The Bureau is not seeking deference here, but merely asking the Court to apply the CFPA's prohibition on unfair, deceptive, and abusive practices. And *NLRB v. Bell Aerospace* only supports the Bureau's position: The Court reiterated the longstanding principle that it is primarily the agency's choice whether to "proceed[] by general rule or by individual, ad hoc litigation." 416 U.S. 267, 293 (1974).

collecting debts that consumers do not actually owe is unfair, deceptive, and abusive. And another court has rejected this very argument in a Bureau action asserting similar claims. *CashCall*, 2016 WL 4820635 at *12. Think apparently objects that it did not know that the debts were invalid. But even if that were true, that mistake is "not a defense to liability." *Id.* at *11 (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010)). Moreover, to the extent that Think suggests that it lacked *fair notice* that the debts were not owed, that amounts to a claim that the relevant lending laws of the seventeen Subject States are unconstitutionally vague. Think does not and cannot support that radical claim—particularly given that economic civil statutes like those laws are unconstitutionally vague only if they provide "no rule or standard at all." *Boutilier v. INS*, 387 U.S. 118, 123 (1967); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) ("[E]conomic regulation is subject to a less strict vagueness test … because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.").

**G. Think's constitutional challenge to the Bureau does not warrant dismissal.**

Think claims that this action must be dismissed because "[t]wo facets" of the Bureau's organic statute—for-cause removal protection for the Bureau's Director and funding outside of the annual appropriations process—violate the Constitution.

Mem. at 9-10. This argument fails for two independent reasons.

First, Think's constitutional argument no longer applies because the Bureau is now led by an Acting Director who is removable at will, and that official has approved this case. The Court therefore need not reach Think's constitutional argument. In particular, on November 24, 2017, the Bureau's former Director resigned, and President Trump designated Mick Mulvaney to serve as the Bureau's Acting Director pursuant to the Federal Vacancies Reform Act, 5 U.S.C. §§ 3345-3349d.[14] Acting Director Mulvaney approved the filing of the amended complaint that Think now moves to dismiss. *See* Ex. 4, Declaration of Eric Blankenstein ¶ 4. And the for-cause removal provision that Think challenges does not apply to Acting Director Mulvaney. By its terms, that provision applies only to "the Director," not to an Acting Director. 12 U.S.C. § 5491(c)(3). As the Department of Justice's Office of Legal Counsel explained, "Congress does not, by purporting to give tenure protection to a Senate-confirmed officer, afford similar protection to an individual who temporarily performs the functions and duties of that office when it is vacant." *Designating an Acting Director of the Bureau of Consumer Financial Protection*, 41 Op. O.L.C. ___, 2017 WL 6419154, at *7 (Nov. 25, 2017). And the

---

[14] *See* The White House, Office of the Press Secretary, *Statement on President Donald J. Trump's Designation of OMB Director Mick Mulvaney as Acting Director of the Consumer Financial Protection Bureau* (Nov. 24, 2017), https://www.whitehouse.gov/the-press-office/2017/11/24/statementpresident-donald-j-trumps-designation-omb-director-mick.

Vacancies Reform Act does not preclude the President from designating a different Acting Director, thereby removing Mr. Mulvaney from that role.

Because Acting Director Mulvaney is removable at will, Think's constitutional challenge does not apply to actions that the Bureau takes under his leadership, such as the decision to pursue this case. Although Think also challenges the Bureau's funding, it does not (and could not) contend that the funding, standing alone, presents a constitutional problem, but rather only that the funding and removal protection violate the Constitution "when taken together." Mem. at 9.

Think also can't obtain dismissal on the ground that this case was *initially* filed by an agency led by a Director removable only for cause—even if its constitutional challenge had merit (which it does not). In *Gordon*, the Ninth Circuit rejected a similar claim that a Bureau enforcement action had to be dismissed because a Director who was appointed in violation of the Appointments Clause had initially approved it. 819 F.3d at 1190-92. There, a properly appointed Director later ratified the decision to file the suit. *Id.* at 1186. The court held that this ratification "cure[d] any initial [constitutional] deficiencies." *Id.* at 1190-91. The same principles apply here. The decision by the Acting Director—who is removable at will—to file the amended complaint cured any possible constitutional deficiencies that could have arisen from the suit's initial approval by a Director

removable only for cause. The Acting Director's decision to pursue this case gave Think all the relief to which it could be entitled, even under its own mistaken theory—because an official undeniably accountable to the President has decided to pursue the enforcement action against it. The Court therefore need not address Think's constitutional challenge.

Second, that challenge fails under binding Supreme Court precedent in any event.[15] All but one court to have considered the issue agree: Congress did not violate the Constitution when it created the Bureau.[16] As the en banc D.C. Circuit has explained, Supreme Court precedent establishes that the for-cause removal restriction in the Bureau's statute does not "impair[] the President's ability to

---

[15] The Bureau does not take a position on whether existing Supreme Court precedent was correctly decided, or whether the President has independent authority to determine whether the Bureau's structure is constitutional.

[16] *See PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018) (en banc); *CFPB v. All American Check Cashing, Inc.*, No. 16-356 (S.D. Miss. Mar. 21, 2018) (ECF No. 236), *interlocutory appeal pending*, No. 18-60302; *CFPB v. Future Income Payments, LLC*, 252 F. Supp. 3d 961 (C.D. Cal. 2017), *stayed pending appeal*, No. 17-55721; *CFPB v. Nationwide Biweekly Admin., Inc.*, No. 15-2106, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017), *appeal docketed*, No. 18-15431; *CFPB v. TCF Nat'l Bank*, No. 17-0166 (D. Minn. Sept. 8, 2017) (ECF No. 89); *CFPB v. Seila Law, LLC*, No. 17-01081, 2017 WL 6536586 (C.D. Cal. Aug. 25, 2017), *stayed pending appeal*, No. 17-56324; *Navient Corp*., 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017); *CashCall*, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016), *appeal docketed*, No. 18-55479; *ITT*, 219 F. Supp. 3d 878 (S.D. Ind. 2015); *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082 (C.D. Cal. 2014); *but see D&D Mktg.*, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016), *interlocutory appeal pending*, No. 17-55709 (following now-vacated panel decision in *PHH* to hold that for-cause provision violated Constitution).

assure the faithful execution of the law." *PHH*, 881 F.3d at 90 (citing *Morrison v. Olson*, 487 U.S. 654, 691-92 (1988)), and *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495-96 (2010)); *see also Humphrey's Executor v. United States*, 295 U.S. 602, 619-20, 623 (1935) (approving identical for-cause removal protection for Federal Trade Commission). The Bureau's funding likewise wholly comports with the Constitution. Congress, by statute, authorized the Bureau to obtain funding from the Federal Reserve, up to specified annual limits. 12 U.S.C. § 5497(a). This does not "unconstitutionally block[]" Congress's power of the purse. Mem. at 10-11. Congress retains full power to change the Bureau's funding pursuant to the ordinary legislative process. And the Constitution permits Congress to fund agencies outside of "the ordinary appropriations process." *PHH*, 881 F.3d at 95; *accord Am. Fed'n of Gov't Emps., AFL-CIO, Local 1647 v. FLRA*, 388 F.3d 405, 409 (3d Cir. 2004). Neither the Bureau's "budgetary independence" nor its for-cause removal protection violates the Constitution, either "separately" or in "combination." *PHH*, 881 F.3d at 96.[17]

---

[17] Even if there were a constitutional problem, Think errs in contending that only Congress could fix it. Congress expressly provided that any unconstitutional provision should be severed and the remainder of the Act left intact, 12 U.S.C. § 5302—an instruction that Think cannot overcome. *Accord PHH,* 881 F.3d at 198-200 (Kavanaugh, J., dissenting) (concluding that severance would be proper remedy if for-cause removal provision were unconstitutional).

## IV. CONCLUSION

For the foregoing reasons, the Bureau's FAC is adequately pleaded, Defendants' motion to dismiss is meritless, and this action should proceed.

Dated: May 22, 2018

Respectfully submitted,

Kristen A. Donoghue
*Enforcement Director*

Deborah Morris
*Deputy Enforcement Director*

Craig Cowie
*Assistant Litigation Deputy*

/s/ Vanessa Buchko
Vanessa Buchko
Benjamin Vaughn
Adrienne Warrell
*Enforcement Attorneys*
Kristin Bateman
*Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Buchko): 202-435-9593
Telephone (Vaughn): 202-435-7964
Telephone (Warrell): 202-435-7013
Telephone (Bateman): 202-435-7821
Fax: 202-435-7722
E-mail: Vanessa.Buchko@cfpb.gov
E-mail: Benjamin.Vaughn@cfpb.gov
E-mail: Adrienne.Warrell@cfpb.gov
E-mail: Kristin.Bateman@cfpb.gov
*Attorneys for Consumer Financial Protection Bureau*

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that the foregoing Opposition to Defendant's Motion to Dismiss, is double spaced, is a proportionately spaced 14-point typeface, and contains 7,999 words, excluding the caption, tables of contents and authorities, exhibit index, signature block, and certificates of service and compliance.

/s/ Vanessa Buchko
Consumer Financial Protection Bureau

**CERTIFICATE OF SERVICE**

I, Vanessa Buchko, certify that on May 22, 2018, I served the foregoing document on all counsel of record via the Court's CM/ECF system. The document is available for viewing and downloading from the ECF system.

/s/ Vanessa Buchko
Consumer Financial Protection Bureau