## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## GREAT FALLS DIVISION

CONSUMER FINANCIAL
PROTECTION BUREAU,

       *Plaintiff,*

v.

THINK FINANCE, LLC, formerly known
as Think Finance, Inc., THINK FINANCE
SPV, LLC, FINANCIAL U, LLC, TC
LOAN SERVICE, LLC, TAILWIND
MARKETING, LLC, TC
ADMINISTRATIVE SERVICES, LLC,
and TC DECISION SCIENCES, LLC

       *Defendants.*

Case No. 4:17-cv-00127-BMM

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

ARGUMENT .........................................................................................................1

I.      The CFPB fails to show that its structure is constitutional. ...................1

II.     The CFPB fails to show that its claims are permitted by the
        CFPA. ......................................................................................................2

        A.      The CFPB impermissibly attempts to enforce state law. ............2

        B.      The CFPB concedes that it has not engaged in
                rulemaking to establish "Federal law". .......................................4

III.    The Tribal Lenders are indispensable parties. .......................................5

IV.     The Court lacks personal jurisdiction over Think SPV. ........................6

V.      The CFPB fails to salvage the CFPA claims. ........................................8

        A.      Common enterprise liability does not exist under the
                CFPA. ...........................................................................................9

        B.      The CFPB fails to salvage the claim for deceptive
                conduct. .........................................................................................9

        C.      The Complaint does not allege unfair conduct. .......................11

VI.     The statute of limitations bars certain claims against the
        Subsidiaries. .........................................................................................12

VII.    The Opposition's lengthy argument about choice of law is
        irrelevant. .............................................................................................12

CONCLUSION ....................................................................................................13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,
　480 F.3d 470 (7th Cir. 2007) ................................................................3

*Bond v. United States*,
　134 S. Ct. 2077 (2014)..........................................................................3

*CFPB v. D & D Mktg.*,
　No. 15-09692, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016) ...........10

*Churchill v. Trinity Universal Ins. Co.*,
　No. 08-99, 2010 WL 11468358 (D. Mont. Mar. 2, 2010)...................7

*Commonwealth of Pa. v. Think Finance, Inc.*,
　No. 14-cv-7139, 2018 WL 637656 (E.D. Pa. Jan. 31, 2018) ..............8

*Dawavendewa v. Salt River Project Agric. Improvement and Power
　Dist.*,
　276 F.3d 1150 (9th Cir. 2002) .........................................................5, 6

*Easter v. Am. W. Fin.*,
　381 F.3d 948 (9th Cir. 2004) ...............................................................8

*Everette v. Mitchem*,
　146 F. Supp. 3d 720 (D. Md. 2015).....................................................6

*FEC v. NRA Political Victory Fund*,
　6 F.3d 821 (D.C. Cir. 1993)................................................................2

*Monahan v. Great Plains Lending, LLC*,
　No. CA15-449, 2016 WL 6127568 (Fla. Cir. Ct. Sept. 30, 2016) ......6

*Odom v. Microsoft Corp.*,
　486 F.3d 541 (9th Cir. 2007) ............................................................11

*Porter v. Jones*,
　319 F.3d 483 (9th Cir. 2003) ...............................................................1

*SOS Co., Inc. v. E-Collar Techs., Inc.*,
   No. 16-9667-AB, 2017 WL 5714716 (C.D. Cal. Oct. 17, 2017) .......................12

*Stevens v. Corelogic, Inc.*,
   194 F. Supp. 3d 1046 (S.D. Cal. 2016) ............................................................11

*Taylor v. Portland Paramount Corp.*,
   383 F.2d 634 (9th Cir. 1967) ...............................................................................7

**Statutes**

5 U.S.C. § 3346(a) ......................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................................10

Fed. R. Civ. P. 9(b) ...........................................................................................9, 10, 11

## INTRODUCTION

The CFPB's Opposition fails to salvage its claims.  The CFPB continues to impermissibly lump together all defendants and assert broad claims not tied to the Complaint's actual allegations.  That the Complaint is so threadbare is telling where it was preceded by a multi-year investigation and drafted with the Think Entities' original dismissal arguments in hand.

## ARGUMENT

**I.     The CFPB fails to show that its structure is constitutional.[1]**

The CFPB initially sidesteps whether its structure is constitutional, instead arguing that any defect has been mooted or ratified by the Acting Director's approval of this lawsuit (Opp. at 28-30).  Even if the CFPB is correct that the Acting Director's presence solves the constitutional problem (and it is not), the Think Entities' challenge would be "capable of repetition, yet evading review." *See Porter v. Jones*, 319 F.3d 483, 489-90 (9th Cir. 2003).  The Acting Director's appointment is only temporary and a successor must be named no later than June 22, 2018.  5 U.S.C. § 3346(a).  This issue is therefore certain to soon spring back into being.  Nor can the Acting Director ratify the original decision to file suit where the CFPB "lack[ed] authority to bring this enforcement action" in the first

---

[1] In this Brief, the Think Entities return to the order of arguments in the Memorandum, rather than the jumbled order in the CFPB's brief.

place.  *See FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993).

Only after attempting to avoid the issue does the CFPB defend its constitutionality, but in doing so it does not even take a "position on whether" the case law it cites "was correctly decided."  Opp. at 31 n.15.  This meek response is unsurprising given that the Acting Director continues to echo the position that his own agency is unconstitutionally structured.  Mem. at 10 n.7.  This Court should follow the federal agencies and officers that have taken a position on this issue, the CFPB's own Acting Director and the Department of Justice, and hold the CFPB to be unconstitutionally structured.  *Id.* at 9-11.

## II.     The CFPB fails to show that its claims are permitted by the CFPA.

### A.     The CFPB impermissibly attempts to enforce state law.

In the Memorandum, the Think Entities explained that this lawsuit is not brought "under Federal law," the only law that the CFPB is permitted to enforce, but rather under state law; it therefore is beyond the limits of the CFPA and improperly usurps the judgments of the Subject States.  Mem. at 13-15.  The CFPB concedes in opposition that the sole basis of its claims are that the "loans are void" under allegedly governing "state law," not Federal law.  Opp. at 25.  It then argues that the CFPB may stand in the Subject States' place and sue for violations of those state laws.  *See id.* at 25-26.

Initially, it should give this Court particular pause that there *is* a federal law

2

expressly concerning debt collection—the Fair Debt Collection Practices Act ("FDCPA")—yet the Bureau does not invoke that law in its Complaint. Paradoxically, the Bureau cites *two* cases concerning this statute as grounds for being able to sue over the collection of interest in excess of state law.  If this case—and the Defendants' conduct—actually violated "Federal law" then the Bureau surely would have sued under the FDCPA or some other applicable federal statute.  But it did not.  Instead, it attempts to stretch its "Federal law" enforcement powers beyond any sensible meaning.

The two CFPA cases the Bureau relies on—*NDG* and *CashCall*—are unpersuasive; neither considered the extent to which the Bureau's actions usurp the judgment of the states at issue, a crucial consideration where the relevant standard expressly aims to preserve the "constitutional balance between the National Government and the States."  *See Bond v. United States*, 134 S. Ct. 2077, 2089-92 (2014).  Indeed, despite citing several dozen cases in the Opposition, the CFPB ignores *Bond* and *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007), which rebut the CFPB's tautological assertion that it may transform violations of state law into federal UDAAP violations by its own *ipso facto*.  As those cases held, it is only in narrow circumstances, where Congress explicitly permitted the agency to do so, that an agency can sue to enforce state law, lest the balance between the federal government and the states be upset.

3

**B.      The CFPB concedes that it has not engaged in rulemaking to establish "Federal law".**

The Memorandum also detailed that the impropriety of this suit is compounded by the CFPB's position that it can announce a novel interpretation of an amorphous UDAAP law for the first time in litigation and then seek retroactive damages.  Mem. at 15-18.

In opposition, the CFPB concedes that it has never defined federal UDAAP.  Opp. at 27.  This is fatal under the plain language of the CFPA, under which Congress required the CFPA to "declare" what it believes to constitute federal UDAAP violations.  Mem. at 12-13.  Declarations cannot come through ad hoc litigation, as that would frustrate the purpose of defining the law before that law is applied.  *Id.* at 16.  Here, the novelty of the CFPB's theory (*id.* at 16-17) makes it all the more important that the CFPB do so.  The *Navient* case, upon which the CFPB relies, is wrongly decided on this point because it ignores the purpose of the statute's declaration requirement.  *See* Opp. at 27.  An agency litigating a position does not "declare" what the law is but rather seeks to win a case by any means available and asks *the court* to declare the law.

The CFPB then misstates the Think Entities' Due Process argument.  *See* Opp. at 27-28.  The Think Entities did not contend that they lacked fair notice of states' laws, but rather that they (and the rest of the world) lacked fair notice that CFPB would seek to enforce state law where the states in question had all chosen

4

not to apply or seek to enforce the subject statutes.  Indeed, given the states'

diverse position with respect to Tribes and tribal businesses, there is every reason

to believe some of the Subject States do not even agree with the CFPB's position

as to whether their laws were violated.  *See* Mot. for Leave to File Amicus Curiae

Br. of State of Okla. at 3, ECF No. 55; Rosenberg Decl. Ex. 1, Br. of Amicus

Curiae State of N.M. at 4, *CFPB v. Golden Valley Lending Inc.*, No. 17-cv-2521

(D. Kan. Nov. 27, 2017).  This underscores the inherent fairness problems in the

CFPB attempting to declare the law, particularly state law, through ad hoc

litigation.

## III.   The Tribal Lenders are indispensable parties.

In response to the Think Entities' argument that the CFPB fails to and

cannot join the indispensable Tribal Lenders (Mem. at 19-22), the CFPB offers up

six scattershot responses.  Each fails.

First, second, and third, the CFPB claims that the Tribal Lenders are not

necessary parties because they have not claimed an interest in the case and are only

"joint tortfeasors" with the Think Entities, which can represent their interests.

Opp. at 21-22.  Each argument conflicts with *Dawavendewa v. Salt River Project*

*Agricultural Improvement and Power District*, 276 F.3d 1150 (9th Cir. 2002), and

therefore fails.  *Dawavendewa* found that the tribal party was necessary because its

contractual interests would be impaired by the suit, and did not require the absent

5

party to claim an interest nor state that whether the party is necessary turns on whether its interests are represented. 276 F.3d at 1157. The CFPB cannot seriously deny that an order voiding the tribal loans does not implicate very substantially those parties' interests.

Fourth, fifth and sixth, the CFPB argues that the Tribal Lenders can be joined to this lawsuit or are otherwise not indispensable. Opp. at 23-24. The CFPB's statement that it is "unclear" whether the Tribal Entities are arms of the Tribes (Opp. at 23 n.12) is inconsistent with decisions holding that the Tribal Lenders are arms of their respective Tribes. Mem. at 20; *Monahan v. Great Plains Lending, LLC*, No. CA15-449, 2016 WL 6127568, at *4 (Fla. Cir. Ct. Sept. 30, 2016); *Everette v. Mitchem*, 146 F. Supp. 3d 720, 724 (D. Md. 2015) (concerning MobiLoans). In any event, if the Court finds that the Tribal Lenders are necessary parties that can be joined, the Court should order them joined.

## IV. The Court lacks personal jurisdiction over Think SPV.

The CFPB concedes the truth of the facts asserted in the Wong Declaration that Think SPV submitted as part of its motion, and responds with no affirmative proof of its own but rather citations to unauthenticated documents and bare allegations that Think SPV is an alter ego of Think Finance, LLC ("Think LLC"). The CFPB's failure to respond with an affidavit of its own establishing the Court's jurisdiction over Think SPV compels a finding for Think SPV. *See Taylor v.*

6

*Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967).[2]

The alter ego assertions are irrelevant for another reason, as they are not even set forth in the Complaint.  What is said in the Opposition is not sufficient to raise an issue as the CFPB has pointed to nothing to show as the CFPB must, for example, that Think SPV has disregarded all corporate formalities.  *See Churchill v. Trinity Universal Ins. Co.*, No. 08-99, 2010 WL 11468358, at *4 (D. Mont. Mar. 2, 2010).  If the CFPB were correct that its limited allegations were sufficient to establish the alter ego status of Think SPV, then any special purpose subsidiary that shared employees with its parent company would not be considered truly separate.[3]

The CFPB's assertion that the Court has specific jurisdiction over Think SPV rests on the unsupportable contention that because Think SPV ultimately received investment returns on loans made to Montanans it can be sued in Montana.  Opp. at 18.  That is not purposeful availment.  The two cases CFPB cites are inapposite.  The first concerned defendants that had purchased mortgages, making them the beneficiary of the secured real property, and the decision turned

---

[2] Nor should the Court grant the CFPB's request for jurisdictional discovery – the CFPB has already had years of an investigation to substantiate this theory.

[3] Indeed, the CFPB's assertions that Think SPV should be regarded as Think LLC's alter ego cannot be squared with their argument that Think SPV holds participation interests, and the resulting income, that Think LLC has no right to obtain.  *See* Opp. at 16.

then on this ownership stake in in-state property. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960-61 (9th Cir. 2004). By contrast, these are unsecured loans and Think SPV's interest is a purchase of partial participations and not a purchase of the underlying loan. Mem. at 22-23. The second concerned allegations that the entity "helped develop the . . . scheme" and determined that it would operate in the state at issue – and there is no assertion here that Think SPV engaged in similar conduct. *Commonwealth of Pa. v. Think Finance, Inc.*, No. 14-cv-7139, 2018 WL 637656, at *5-6 (E.D. Pa. Jan. 31, 2018).

## V.    The CFPB fails to salvage the CFPA claims.

The CFPB has failed to show that it pleads plausible claims under the CFPA. Indeed, despite claiming that its central theory concerns the Think Entities' collection of loans, the CFPB fails to rebut the Think Entities' argument that the Complaint actually alleges no collection activity by them. Instead, the Complaint merely asserts that the Think Entities (a) drafted template notices, later amended by others, (b) maintained a computer system which the Tribal Entities licensed and used, and (c) for a time, corresponded with some borrowers regarding their complaints. None of these constitute collection actions *by* the Think Entities directed *at* borrowers, or indeed collection at all. For that, and the other reasons cited, the individual Counts fail to state a claim.

8

## A.     Common enterprise liability does not exist under the CFPA.

Initially, the Complaint is deficient because in alleging liability facts it

unfairly groups all seven Think Entities together, and often throws in the Tribal

Entities and others when asserting what 'conduct' violated the law. Mem. at 24-26.

The CFPB may not save its improper group pleading by asserting that common

enterprise liability exists under the CFPA.  Opp. at 10-12.[4]  The Bureau argues that

the Court should interpret the CFPA to include common enterprise liability

because the Federal Trade Commission Act includes that liability (Opp. at 11-12),

but this argument conflicts with Supreme Court authority that courts should not

read into a statute additional forms of liability.  Mem. at  25.  The decisions the

Bureau cites are unpersuasive for that reason.  Moreover, the existence of common

enterprise liability does not excuse the requirement that CFPB state which entity

did which thing, to whom, and when.  And it certainly does not give license to

include entities other than the defendants in alleging operative lability facts.

## B.     The CFPB fails to salvage the claim for deceptive conduct.

The CFPB initially runs from its burden under Rule 9(b), arguing that the

standard does not apply to its deception claim.  Opp. at 6-7.  This is contrary to the

cases the CFPB cites, which make clear that Rule 9(b) applies to deceptive conduct

---

[4] Moreover, the CFPB contends falsely that the Think Entities did not dispute that
they operated as a common enterprise. *See* Opp. at 10.  Though the Court need not
reach that issue where the theory is nonexistent under the CFPA, the Think Entities
do deny it.

claims alleging misrepresentations.  *See, e.g.*, *CFPB v. D & D Mktg*., No. 15-09692, 2016 WL 8849698, at \*10-11 (C.D. Cal. Nov. 17, 2016) (stating that Rule 9(b) would apply to misrepresentation claims); *see also* Mem. at 26.

The CFPB has not satisfied its burden under Rule 9(b), or even under Rule 8.  Although the CFPB states in its Opposition that its Complaint "alleges that Think . . . drafted and sent notices to consumers" (Opp. at 8), the allegations cited describe only **templates** created by the Think Entities that even the CFPB admits were subsequently edited by another before being sent.  *See* Compl. ¶¶ 87-89, 92. These allegations therefore do not allege collection by the Think Entities, nor contact by them with consumers.  Mem. at 27.  Indeed, in places the CFPB does not even cite to its vague allegations of what the Think Entities misrepresented, but rather to what "Think Finance, the Tribal lenders, CMS, and Yessio" did, compounding its group pleading problems.  *See* Opp. at 6.

The CFPB then attempts to transform the Complaint's allegations that the Think Entities "created, maintained, and operated" a computer system for managing authorized automatic withdrawals (*see* Compl. ¶¶ 87-90, 96-98) into conduct by the Think Entities in actually collecting on the loans.  But, as the Think Entities argued in the Memorandum and the CFPB does not dispute, allegations regarding the output of a computer system licensed to and over which the Tribal Lenders had final authority are insufficient to allege conduct by the Think Entities.

10

*See Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016).[5]

The CFPB is then left solely with its allegation that the Think Entities responded to "consumer complaints," and its quotation from one response.  Mem. at 26.  These allegations fail to meet the CFPB's burden under Rule 9(b) even under the cases it cites.  *See, e.g.*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).

### C.      The Complaint does not allege unfair conduct.

An alleged practice is not unfair if the supposed harm could reasonably have been avoided by the consumer, and that principle is fatal to the unfairness claim because all material terms of the loan, including the assertion that Tribal law controlled the contract, were disclosed before closing.  Mem. at 29-30.  The CFPB argues that consumers could not reasonably avoid any harm because neither the Think Entities nor the other relevant parties disclosed "the fact that the contracts were void."  Opp. at 3-4.  Whether the contracts are void or not – and, they are not – is not the relevant question because, as CFPB concedes, the consumers learned before signing up that the Tribal lenders intended to apply tribal law. If the consumers wanted state law to apply, they could have reasonably avoided these

---

[5] The CFPB's only response to this argument is that, because it alleges the Think Entities "direct[ed] and controll[ed]" the Tribal Lenders, the Tribal Lenders' conduct was the Think Entities' as well.  Opp. at 6, n.1.  The CFPB's circular logic proves too much and cannot be squared with its admissions that the Tribal Lenders had significant roles in their lending operations. *E.g.*, Compl. ¶¶ 10, 28-36, 53-54, 63, 69, 72, 81, 89, 158-59.

loan products.

The CFPB's alternative defense of the unfairness claims, that any harm occurred at collection and therefore origination of the loan is irrelevant (Opp. at 4-5), is plainly wrong.  The CFPB's choice to sue only with regards to collection and not origination does not alter the fact that borrowers could have avoided any alleged harm from their loan by not executing the loan in the first place.

**VI.   The statute of limitations bars certain claims against the Subsidiaries.**

The CFPB asks the Court to expand the bargain it struck in the tolling agreements to include the Subsidiaries as well.  Opp. at 19-20.  The CFPB's argument that tolling agreements apply to an entity's subsidiaries as well as the parent makes a mockery of the words of the contracts and would discourage tolling agreements.[6]

**VII.   The Opposition's lengthy argument about choice of law is irrelevant.**

The CFPB misstates the Think Entities' motion to dismiss, devoting an entire section of their Opposition to "responding" to an argument that the Think Entities never made, namely whether the Complaint sufficiently alleges that the Subject States' laws apply rather than tribal law.  Opp. at 12-14.  The Think

---

[6] The chief case the CFPB cites declined to extend a tolling agreement to third parties where the plaintiff made more detailed allegations than the CFPB does to support its alter ego argument.  *See SOS Co., Inc. v. E-Collar Techs., Inc.*, No. 16-9667-AB, 2017 WL 5714716, at *5-6 (C.D. Cal. Oct. 17, 2017).

Entities did not move to dismiss the Complaint on that basis.[7]  As a consequence, the Court should not reach, or decide, the question of whether the allegations are appropriate or, indeed, which law applies to the subject loan contracts.  In any event, particularly as the CFPB frames it (Opp. at 12-14), choice of law is a contested issue which, because it rests (in part) on facts beyond the pleadings, cannot be at issue on this motion to dismiss.[8]

## <u>CONCLUSION</u>

For these reasons, and those in the Memorandum, the Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated:  June 7, 2018              By:   */s/ Thomas M. Hefferon*
                                       THOMAS M. HEFFERON (*pro hac vice*)
                                       MATTHEW S. SHELDON (*pro hac vice*)
                                       **GOODWIN PROCTER LLP**
                                       901 New York Avenue NW
                                       Washington, DC 20001
                                       Tel.: 202-346-4000
                                       Fax.: 202-346-4444
                                       *thefferon@goodwinlaw.com*
                                       *msheldon@goodwinlaw.com*

---

[7] The Think Entities discussed the issue in their introduction (Mem. at 8-9), in much the same way as the CFPB asserts in its introduction that the Think Entities were the "true lender." Opp. at 1.

[8] For example, the CFPB makes assertions about what consumers and the Tribal Entities said and did, and what the Subject States' laws are, but those allegations will be contested.  *See, e.g.*, Opp. at 12 ("Think" controlled the lending operation); *id.* at 13(the Subject States agree with the CFPB that the cited licensing or rate statutes are "fundamental" to that state).  Indeed, the Tribal Lenders actively managed their loan programs, including by controlling the underwriting for the loans, and received tens of millions of dollars in profits from their loan programs.

13

DAVID ROSENBERG (*pro hac vice*)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.:   617-570-1000
Fax.:   617-523-1231
*drosenberg@goodwinlaw.com*

*/s/ Leo S. Ward*

LEO S. WARD
**BROWNING KALECZYC BERRY &
HOVEN P.C.**
800 N. Last Chance Gulch, Suite 101
Helena, MT 59601
Tel.:  (406) 443-6820
leow@bkbh.com

Attorneys for Defendants:
THINK FINANCE, LLC; THINK
FINANCE SPV, LLC; FINANCIAL U,
LLC; TC LOAN SERVICE, LLC;
TAILWIND MARKETING, LLC; TC
ADMINISTRATIVE SERVICES, LLC;
and TC DECISION SERVICES, LLC

14

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that Defendants' Reply Memorandum in Support of Their Motion to Dismiss is double spaced, is a proportionately spaced 14-point typeface, and contains [_] words, excluding the caption, signature block, certificates of service and compliance, and tables of contents and authorities.

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas M. Hefferon, certify that on this 7th day of June, 2018, I served the foregoing document on all counsel of record via the Court's CM/ECF system. The document is available for viewing and downloading from the ECF system.

*/s/ Thomas M. Hefferon*
Thomas M. Hefferon

16