# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | No. CV-17-127-GF-BMM |
| Plaintiff, | |
| v. | |
| THINK FINANCE, LLC, formerly known as Think Finance, Inc., et al., | ORDER |
| Defendants. | |

## INTRODUCTION

Plaintiff Consumer Financial Protection Bureau ("CFPB") commenced this action on November 15, 2017. (Doc. 1.) CFPB filed an Amended Complaint on March 28, 2018. (Doc. 38.) The Amended Complaint alleges four violations of the Consumer Financial Protection Act. (Doc. 38 at 37-42.) Defendants Think Finance, LLC ("Think Finance"), Think Finance SPV, LLC, Financial U, LLC, TC Loan Service, LLC, Tailwind Marketing, LLC, TC Administrative Services, LLC, and TC Decision Sciences, LLC (collectively "Subsidiaries") filed the instant Motion to Dismiss on April 24, 2018. (Doc. 50.) The Native American Financial Services Association and the State of Oklahoma filed a joint amicus brief in support of the

1

Motion to Dismiss on June 19, 2018. (Doc. 65.) The Court held a hearing on the motion on June 21, 2018. (Doc. 66.)

## BACKGROUND

Think Finance operates a lending business that extends credit, services loans, and collects debt throughout the United States. (Doc. 38 at 4.) Think Finance SPV, Financial U, and TC Loan Service constitute wholly-owned subsidiaries of Think Finance. (Doc. 38 at 5-6.) Tailwind Marketing, TC Administrative Services, and TC Decision Sciences represent wholly-owned subsidiaries of TC Loan Service. (Doc. 38 at 6-8.) CFPB operates as an independent agency of the United States Government created under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5491(a). (Doc. 38 at 3.)

CFPB's Amended Complaint concerns three lending businesses owned by Indian tribes ("Tribal Lenders") for which Think Finance provided critical services. (Doc. 38 at 4, 9.) The Tribal Lenders are not party to this action.

The Amended Complaint alleges that Think Finance, through the Tribal Lenders, collected loan payments that customers did not owe, as the loans issued to those customers were void *ab initio* due to violations of state law. (Doc. 38 at 29, 34, 37-39.) CFPB alleges that Think Finance used unfair and abusive practices to collect on these void loans. (Doc. 38 at 39-41.) Finally, CFPB alleges that Think Finance provided substantial assistance to Tribal Lenders and other entities who, in

turn, committed deceptive, unfair, and abuse acts or practices by demanding

payment for and collecting void debts. (Doc. 38 at 41-42.)

**DISCUSSION**

Defendants raise multiple grounds for dismissal, including: 1) that the

structure of the CFPB is unconstitutional; 2) that the CFPB's claims are not

permitted by the CFPA; 3) that the Complaint fails to, and cannot, join

indispensable parties; 4) that the Court lacks personal jurisdiction over Think SPV;

5) that the Complaint fails to state cognizable claims under the CFPA; and 6) that

certain claims against the Subsidiaries are time-barred. (Doc. 51 at 2.)

## I.    The Structure of the CFPB

Defendants argue that the structure of the CFPB violates the Constitution

because the President may remove the Director of the CFPB only for cause. (Doc.

51 at 16.) Defendants argue additionally that the CFPB's ability to control its own

budget—subject to a statutory cap—unconstitutionally interferes with Congress's

power to direct federal spending pursuant to the Appropriations Clause, U.S.

Const. art. I, § 8, cl 1. Defendants point out that the Acting Director of the CFPB

and the Department of Justice now question the constitutionality of the CFPB's

structure. (Doc. 51 at 17 n.7)

Nine district court orders have determined that Congress did not violate the

constitution in structuring the CFPB. *CFPB v. All American Check Cashing, Inc.,*

No. 16-356 (S.D. Miss. Mar. 21, 2018) (ECF No. 236); *CFPB v. Future Income Payments, LLC,* 252 F. Supp. 3d 961 (C.D. Cal. 2017); *CFPB v. Nationwide Biweekly Admin., Inc.,* No. 15-2106, 2017 WL 3948396 (N.D. Cal. Sept. 8, 2017); *CFPB v. TCF Nat'l Bank,* No. 17-0166 (D. Minn. Sept. 8, 2017) (ECF No. 89); *CFPB v. Seila Law, LLC,* No. 17-01081, 2017 WL 6536586 (C.D. Cal. Aug. 25, 2017); *CFPB v. Navient Corp.*, No 17-101, 2017 WL 3380530 (M.D. Penn. Aug. 4, 2017); *CFPB v. Cashcall, Inc*., CV15-7522, 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *CFPB v. ITT Educ. Servs.,* 219 F. Supp. 3d 878 (S.D. Ind. 2015); *CFPB v. Morgan Drexen, Inc.,* 60 F. Supp. 3d 1082 (C.D. Cal. 2014). Only one circuit Court that has considered the issue has determined the CFPB to be unconstitutionally structured.[1] *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016). The D.C. Circuit subsequently reversed that decision upon en banc consideration. *PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018) (en banc).

The D.C. Circuit determined ultimately that the for-cause removal requirement does not "impair[] the President's ability to assure the faithful execution of the law." *Id*. at 90 (citing *Morrison v. Olson*, 487 U.S. 654, 691-92 (1988), and *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495-96 (2010)). Similarly, *Humphrey's Executor v. United States*, 295 U.S.

---

[1] One district court did rely on the now-vacated panel decision to hold that the for-cause removal provision violated the Constitution. *CFPB v. D&D Mktg.,* No. 2:15-09692, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016).

602, 619-20 (1935), upheld an identical for-cause removal provision for the Federal Trade Commission. Aspects of this argument currently remain pending before the Ninth Circuit. (Doc. 51 at 18 n.8.)

Elections certainly have consequences, and the CFPB's director and the Department of Justice's shifting position on this issue seem to reflect those consequences. The Defendants present no argument, however, that has not already been rejected by several district courts within the Ninth Circuit, and by the en banc panel of the D.C. Circuit. The Court deems it appropriate to follow these precedents to determine that the structure of the CFPB comports with the Constitution.

## II.     The Nature of the Claims and the CFPA

Defendants argue that CFPB's claims are not permitted by the CFPA. Defendants first argue that the CFPA does not allow the CFPB to bring claims regarding unfair, deceptive, and abusive practices ("UDAAP") based on state law, or to declare violations of "Federal law" without prior rulemaking. Second, Defendants argue that Congress has explicitly prohibited the CFPB from imposing interest rate limits.

## A. State Law and Usury Limits

The Amended Complaint alleges that Defendants engaged in deceptive (Count I), unfair (Count II), and abusive (Count III) practices when collecting on loans made by the Tribal Lenders. (Doc. 38 at 37-44.) CFPB alleges that the law of the states in which the Tribal Lenders' consumers resided operated to void the loans due to local usury limits or licensing rules. Defendants' subsequent collection on those void loans constituted the UDAAPs that comprise the subject of the complaint.

Defendants contend that the CFPB exceeds its statutory authorization to prevent "unfair, deceptive, or abusive act[s] or practices under Federal law" and upsets the balance of state-federal relations by enforcing state law through the CFPA. (Doc. 51 at 21.) Defendants further contend that the CFPB attempts to subvert Congress's explicit prohibition on the CFPB establishing a usury limit. (Doc. 51 at 25); 12 U.S.C. § 5517(o).

Two district courts have considered similar arguments that the CFPB seeks to enforce a usury limit by prohibiting the collection of void loans. Both courts have determined that "enforc[ing] a prohibition on collecting amounts that consumers do not owe" differs from "establish[ing] a usury limit." *CFPB v. CashCall, Inc.*, No. 15-7522, 2015 WL 9591569, at *2 (C.D. Cal. Dec. 30, 2015);

*see also CFPB v. NDG Fin. Corp.*, No. 15-5211, 2016 WL 7188792, at *18 (S.D.N.Y. Dec. 2, 2016). The Court agrees.

The argument that CFPB seeks to enforce state law fails for similar reasons. The CFPA declares it unlawful for "any covered person or service provider . . . to engage in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). The fact that state law may underlie the violation—for example, to operate to void a loan, as alleged here—does not relieve Defendants, or any other covered person or service provider, of their obligation to comply with the CFPA.

## B.      Rulemaking and Declaring

The CFPA authorizes the CFPB to take action to prevent a covered person or service provider from committing or engaging in UDAAPs. 12 U.S.C. § 5531(a). The CFPA further authorizes the CFPB to "prescribe rules" that "identify[] as unlawful" UDAAPs. 12 U.S.C. § 5531(b). The CFPA finally limits the types of conduct that the CFPB may declare unfair or abusive. 12 U.S.C. § 5531(c), (d). Defendants argue that "this structure necessarily contemplates" that the CFPB will "make such declarations *before* suing under new theories" of purported UDAAPs. (Doc. 51 at 20.)

Two district courts to have considered this statute have determined that the CFPA imposes no requirement that the CFPB engage in rulemaking before bringing an enforcement action. *Navient Corp.*, 2017 WL 3380530, at *7 (M.D.

Penn. Aug. 4, 2017); *CFPB v. D&D Mktg.*, No. 15-9692, 2017 WL 5974248, at *5
(C. D. Cal. Mar. 21, 2017). The United States Supreme Court long has recognized
that "the choice made between proceeding by general rule or by individual, ad hoc
litigation is one that lies primarily in the informed discretion of the administrative
agency." *N.L.R.B. v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 293
(1974) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947)).

"[D]ue process requires fair notice of what conduct is prohibited." *Newell v.
Sauser*, 79 F.3d 115, 117 (9th Cir. 1996). The CFPA provides fair notice that it
prohibits "unfair, deceptive, or abusive act[s] or practice[s]." As other district
courts have noted, other consumer protection statutes and regulations use these
terms, and their meaning provides "the minimal level of clarity that the due process
provision demands of non-criminal economic regulation." *CFPB v. Cashcall, Inc*.,
CV15-7522, 2016 WL 4820635, at *12 (C.D. Cal. Aug. 31, 2016) (quoting *CFPB
v. ITT Educ. Servs., Inc*., 2015 WL 1013508, at *20 (S.D. Ind. Mar. 6, 2015)); *see
also CFPB v. Gordon*, 819 F.3d 1179, 1193 n.7 (9th Cir. 2016).

### III.    Tribal Lenders as Indispensable Parties

The Court must join parties that "claim[] an interest relating to the subject of
the action" and are "so situated that disposing of the action in the person's
absence" may "impair or impede the person's ability to protect the interest." Fed.
R. Civ. P. 19(a)(1)(B). Where such a party cannot be joined, the court must

consider "whether, in equity and good conscience, the action should proceed." Fed. R. Civ. P. 19(b). To determine whether a complaint should be dismissed for failure to join an indispensable party, the Ninth Circuit asks: 1) whether the absent parties are necessary; 2) whether they cannot be joined; and 3) whether the absent parties are indispensable. *Dawavendewa v. Salt River Project Agric. Improvement and Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002).

Defendants argue that the Tribal Lenders constitute indispensable parties that cannot be joined due to principles of tribal sovereign immunity and immunity under the CFPA. (Doc. 51 at 26.) Defendants first argue that Tribal Lenders' contractual interests would be impaired by resolution of the instant matter if the Court should determine that state law operates to void loans whose contracts contain choice of law provisions. (Doc. 51 at 26.) Defendants next argue that the Tribal Lenders may not be joined because tribes are immune from suit under the CFPA. (Doc. 51 at 27.) Finally, Defendants argue that the Tribal Lenders are indispensable because this action could impair the Tribal Lenders' ability to select tribal law to govern their contracts, and "would not address the Tribal Lenders' contention that they are not 'covered persons' under the CFPA." (Doc. 51 at 28.)

CFPB first asserts that the Tribal Lenders do not represent necessary parties because they have not "actually claimed [they] ha[ve] a legally protected interest" in this litigation. (Doc. 59 at 29 (quoting *Lopez v. Fed Nat. Mortg. Ass'n*, No. 13-

4782, 2013 WL 7098634, at *6 (C.D. Cal. Oct. 8, 2013).) Had the Tribal Lenders claimed an interest, CFPB asserts that the Tribal Lenders still would not be necessary parties as CFPB does not seek rescission of the contracts, contractual remedies, or any relief from the tribe, but instead seeks tort remedies that they may recover from Defendants as joint tortfeasors. (Doc. 59 at 30.) Finally, CFPB argues that the Tribal Lenders are not necessary parties because Defendants adequately can represent the Tribal Lenders' arguments and interests. (Doc. 59 at 30.)

CFPB further asserts that, even if the Tribal Lenders constitute necessary parties, dismissal remains unwarranted because the Tribal Lenders may be joined. (Doc. 59 at 31.) CFPB relies upon *CFPB v. Great Plains Lending, LLC*, 846 F.3d 1049, 1050 (9th Cir. 2017), *cert. denied*, 138 S.Ct. 555 (2017), for the proposition that Tribal Lenders qualify as "persons" subject to the Bureau's investigative authority. CFPB additionally highlights that the Tribal Lenders' status as "arms of the tribes" remains unclear, and that tribal sovereign immunity does not apply in suits brought by a federal agency. (Doc. 59 at 31 n.11-12.)

The *Great Plains* decision relied on *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985), in which the Ninth Circuit determined that the Occupational Safety and Health Act ("OSHA") applied to tribal entities. OSHA represents a law of general applicability and Congress has not explicitly provided otherwise. *Id*. Where a law of general applicability remains silent as to Indian

tribes, the law will apply to tribes unless: "(1) the law touches exclusive rights of self-governance in purely intramural matters; (2) the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or (3) there is proof by legislative history or some other means that Congress intended the law not to apply to Indians or their reservations." *Coeur d'Alene*, 751 F.2d at 1116. The Court notes that the standard upon which the Ninth Circuit based its decision in *Great Plains* asked whether the CFPB "plainly lacked jurisdiction" to issue investigative demands to tribal entities. *Id*. at 1058.

Alternatively, CFPB raises the "public rights" exception to Rule 19 dismissal. The burden on the contractual rights of nonparties proves acceptable where public rights are "vindicated by restraining the unlawful actions of the defendant even though the restraint prevent[s] [] performance of [] contracts," "because such adjudications do not destroy the legal entitlements of the absent parties." *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988). CFPB claims that it falls within the public rights exception. (Doc. 59 at 32.) It seeks relief solely from Defendants, and does not seek to destroy the Tribal Lenders' legal rights. *Id*.

The Court acknowledges the gravity of the tribal interests potentially put at stake by tribes and other actors engaging in the conduct alleged by the CFPB's complaint. The Court remains keenly aware of the tribal sovereign immunity doctrine and sensitive to the doctrine's implications for litigation in federal court.

*See Cain v. Salish Kootenai College*, CV-12-181-M-BMM, 2018 WL 2272792 (D. Mont. May 17, 2018). The Court notes, however, that the extent of the remedies sought by the CFPB arguably will not impede the Tribal Lenders' ability to collect on their contracts or enforce their choice of law provisions directly. Under these circumstances, the Court will not create a means for businesses to avoid regulation by hiding behind the sovereign immunity of tribes when the tribes themselves have failed to claim an interest in the litigation. The same Tribal Lenders notably have claimed an interest in the ongoing Pennsylvania litigation by providing declarations in support of Think Finance and Subsidiaries' Motion to Dismiss for Failure to Join Indispensable Parties. *Cf. Pennsylvania v. Think Finance*, No. 14-cv-7139 (E.D. Pa. Jan. 14, 2016) (ECF No. 67-2, 67-3, 67-4) (declarations of representatives of Tribal Lenders).

## IV.    Personal Jurisdiction over Think SPV

Defendants contend that the CFPB's claims against Think SPV must be dismissed as the court lacks personal jurisdiction over SPV. (Doc. 51 at 29.) Defendants argue that SPV lacks the requisite continuous and systematic contacts that would render it "essentially at home" for purposes of general jurisdiction. (Doc. 51 at 29.) Defendants further argue that CFPB has failed to allege that SPV purposely has directed activities at Montana from which this case arises or to which this case relates. (Doc. 51 at 30.) Defendants liken SPV to an investor, and

highlight the unfairness of haling investors into Court in each state where a plaintiff experienced an injury regardless of the effect of the defendant's conduct. (Doc. 51 at 31.)

CFPB counters that SPV's status as an alter ego of Think Finance subjects SPV to personal jurisdiction in this Court. Personal jurisdiction is imputed to alter egos. *Ranza v. Nike, Inc*., 793 F.3d 1059, 1071 (9th Cir. 2015). The alter ego test requires a prima facie showing: (1) of "such unity of interest and ownership that the separate [entities] . . . no longer exist," and (2) that "failure to disregard [the entities' separateness] would result in fraud or injustice." *Id*. at 1073. "Pervasive control over the subsidiary" where the parent company "dictates every facet of the subsidiary's business" sufficiently demonstrates unity of interest and ownership. *Id*.

The Amended Complaint describes Think SPV as a wholly-owned subsidiary of Think Finance, lacking its own office or infrastructure. (Doc. 38 at 5.) The Amended Complaint alleges that Think Finance management controls and manages SPV. (Doc. 38 at 13.) The Amended Complaint further alleges that SPV conducts no business without the "involvement and control" of Think Finance, such that Think Finance remains responsible for SPV's debts, benefits from SPV's operations, performs all of SPV's contractual obligations, makes all of SPV's business decisions, and conducts all of SPV's operations. (Doc. 38 at 13.) The

CFPB asserts that SPV's sole purpose was to invest in GPL Servicing, Ltd., the investment fund that financed the tribal lenders. (Docs. 38 at 5; 59 at 23.)

Think Finance has emphasized the relatedness of its subsidiaries in the ongoing bankruptcy action. Think Finance, in the bankruptcy action, describes all of the Think entities' "financial affairs and business operations" as "closely related." (Doc. 59 at 24 n.7.) SPV in particular serves as the sole remaining holder of $50 million worth of shares in GPL Servicing, while other subsidiaries remain undercapitalized. (Doc. 59 at 24.)

CFPB additionally argues that, even if the Court determines that SPV is not the alter ego of Think Finance, SPV's participation in Think Finance's activities constitutes purposeful direction and availment. (Doc. 59 at 25.) These allegations prove sufficient at this stage of the proceedings. As the Ninth Circuit noted in *Ranza*, the United States Supreme Court in *Daimler AG v. Bauman,* ___ U.S. ___, 134 S.Ct. 746, (2014), left intact the Ninth Circuit's alter ego test for "imputed" general jurisdiction. 793 F.3d at 1071. The alter ego test analyzes whether the parent and subsidiary are "not really separate entities," such that one entity's contacts with the forum state can fairly be attributed to the other. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). Parental control of the subsidiary's internal affairs or daily operations typifies the "alter ego" relationship. *Id*.

The combination of the allegations in the Amended Complaint and Think Finance's representations in its bankruptcy proceeding satisfies the alter ego test for purposes of establishing general jurisdiction at this stage of the proceedings. SPV holds the remaining $50 million worth of shares in GPL. All of Think's entities, including SPV, retain "closely related" financial affairs and business operations. Further discovery will reveal how closely related these operations remain. Discovery also will determine whether CFPB can establish whether Think Finance's conduct imputes to SPV. Further discovery also will determine whether CFPB can establish that Think Finance stands responsible for SPV's debts, whether Think finance stands as the beneficiary of SPV's operations, and whether Think Finance performs all of SPV's contractual obligations, makes all of SPV's business decisions, and controls all of SPV's operations. Defendants remain free to pursue this claim at summary judgment.

## V.       Failure to State a Claim Arguments

Defendants claim that the CFPB has engaged in improper group pleading by failing to identify which Subsidiaries were involved in what conduct giving rise to the Complaint. (Doc. 51 at 32.) Defendants further allege that the CFPB has failed to plead the statutory elements to support its four claims. (Doc. 51 at 31.)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In evaluating a 12(b)(6)

motion, the Court "must take all allegations of material fact as true and construe

them in the light most favorable to the nonmoving party." *Kwan v. Sanmedica*

*Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quoting *Turner v. City and County of*

*San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015)). To survive a motion to

dismiss, the complaint must allege sufficient facts to state a plausible claim for

relief. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

Federal courts generally view "with disfavor" Rule 12(b)(6) dismissals.

*Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.3d 208, 213 (9th Cir. 1957). "A

case should be tried on the proofs rather than the pleadings." *Id*. Such dismissals

are "especially disfavored" where the plaintiff bases the complaint on "a novel

legal theory that can best be assessed after factual development." *McGary v. City*

*of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (citations omitted). New legal

theories should "be explored and assayed in the light of actual facts rather than a

pleader's suppositions." *Id.*

A.   **Group Pleading**

Defendants contend that CFPB's lack of specificity regarding actions taken

by Think Finance and each of its Subsidiaries requires dismissal of the Amended

Complaint because the allegations fail to put each defendant on notice of its

alleged wrongdoing. (Doc. 51 at 32.) Defendants further contend that the CFPB

may not state a claim based on common enterprise liability because Congress did not expressly reference such liability within the statute. (Doc. 51 at 32.)

Defendants rely on the district court order in *Pennsylvania v. Think Finance*, No. 14-cv-7139, 2016 WL 183289, at \*26 (E.D. Pa. Jan. 14, 2016), for the proposition that the CFPA fails to support such a theory of liability. At least one other district court explicitly has rejected the holding of *Pennsylvania*, however, and determined that common enterprise liability applies under the CFPA based on an analogous reading of the Federal Trade Commission Act ("FTCA"). *NDG*, 2016 WL 7188792, at \*16.

The Ninth Circuit has yet to consider directly whether common enterprise liability exists under the CFPA. The Ninth Circuit has determined that the FTCA may inform a court's interpretation of the CFPA because Congress used similar language in constructing the two statutes. *See Gordon*, 819 F.3d at 1192-93 n. 7-8. The FTCA likewise fails to specifically provide common enterprise liability. The Ninth Circuit nevertheless has recognized that such liability exists under the statute. *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010). The Court thus concludes that common enterprise liability presents a plausible means by which the CFPB may state a claim against Defendants alleging violation of the CFPA.

## B.    Count I: Deceptive Conduct

An act or practice proves deceptive if it makes: (1) material misrepresentations that are (2) likely to mislead consumers, who are (3) acting reasonably under the circumstances. *Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016). Defendants argue that the CFPA requires claims for deceptive conduct to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). (Doc. 51 at 33.) Rule 9(b) requires a party to "state with particularity the circumstances constituting" allegations of fraud or mistake. Fed. R. Civ. P. 9(b).

Under this standard, Defendants argue, the CFPB has failed to plead that Defendants made specific statements or specific omissions that were deceptive. (Doc. 51 at 33.) Defendants argue additionally that even if CFPB had met the Rule 9(b) standard, it has failed to demonstrate that Defendants made statements "likely to mislead consumers acting reasonably under the circumstances . . . in a way that is material." (Doc. 51 at 35) (quoting *Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152, 1168 (9th Cir. 2012)). Defendants argue that the Amended Complaint acknowledges that borrowers' loan agreements contained choice of law provisions. As a result, Defendants contend that CFPB has failed to allege misrepresentation of fact. (Doc. 51 at 35.)

CFPB urges the Court to hold that Rule 9(b) does not apply to deception claims because fraud claims require different elements than deception claims and

because consumer protection statutes bear particular remedial purposes. (Doc. 59 at 15.) CFPB identified one district court that held that 9(b) does apply to CFPA deception claims. *CFPB v. Prime Mktg. Holdings, LLC*, No. 16-07111, 2016 WL 10516097, at *6 (C.D. Cal. Nov. 15, 2016).

CFPB also highlighted three district court orders that declined to apply Rule 9(b) to claims arising under the CFPA. *CFPB v. D&D Mktg.*, No. 2:15-09692, 2016 WL 8849698, at *10-11 (C.D. Cal. Nov. 17, 2016); *CFPB v. All American Check Cashing, Inc.*, No. 3:16-CV-00356-WHB-JCG at 6 (S.D. Miss. July 15, 2016) (ECF No. 24); *CFPB v. Frederick J. Hanna*, 114 F. Supp. 3d 1342, 1373 (N.D. Ga. 2015). Other courts have determined that Rule 9(b) does not apply to consumer protection claims arising under other statutes. *See Neild v. Wolpoff & Abramson, LLP,* 453 F. Supp. 2d 918, 923–24 (E.D. Va. 2006) (a § 1692e(8) violation of the Fair Debt Collection Practices Act is not fraud so Rule 9(b) does not apply); *FTC v. Freecom Commc'ns, Inc.,* 410 F.3d 1192, 1204 n.7 (10th Cir. 2005) (declining to apply Rule 9(b) to the FTCA); *Le Blanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (declining to apply Rule 9(b) to the FDCPA).

These decisions rely primarily on *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). The United States Supreme Court in *Leatherman* cautioned against extending the heightened pleading

standard beyond claims for fraud of mistake. *Id.* at 164. Other courts have recognized the "remedial nature" of consumer protection statutes which Congress enacted to facilitate a consumer's ability to enforce their rights. *See Frederick J. Hanna & Assoc.*, 114 F. Supp. 3d at 1371–74.

The Court recognizes the overwhelming weight of precedent in favor of the CFPB's position. The Court declines to apply the Rule 9(b) heightened pleading standard to the CFPA. CFPB has alleged that material misrepresentations occurred when Defendants informed consumers, impliedly and explicitly, that they possessed a legal obligation to pay. (Doc. 59 at 13-14.) CFPB's allegations sufficiently state a claim for deceptive practices under the CFPA at this stage.

### C. Count II: Unfair Conduct

The CFPA defines "unfair" as an act or practice that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers" and "not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. §§ 5531(c)(1)(A)-(B). Defendants contend that consumers could have "reasonably avoided" the harm alleged by not accepting the terms of the loans when the lenders disclosed the terms before the signing. (Doc. 51 at 36.) Defendants further allege that Count II must be dismissed because CFPB failed to quantify or identify the benefits that the loans provided to their borrowers. (Doc. 51 at 37.)

Defendants' motion focuses on the wrong part of the loan transaction. Customers could not have avoided the alleged injury—Defendants' attempted collection of amounts that the consumer allegedly did not owe—by declining the loan. The customer's contract already had been made at the time that Defendants collected on the loans. The Court further determines that Defendants' argument regarding quantification of the benefits of the products should be raised at the merits stage of the litigation.

### D.     Count III: Abusive Conduct

The CFPA defines abusive conduct as an act that "materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service," or "takes unreasonable advantage of:" 1) the consumer's "lack of understanding. . . of the material risks, costs, or conditions of the product or service," 2) the consumer's "inability to protect [their] interests . . . in selecting or using a consumer financial product or service," or 3) the consumer's "reasonable reliance . . . on a covered person to act in the [consumer's] interest." 12 U.S.C. § 5531(d). Defendants argue that CFPB does not allege that Defendants failed to disclose any material terms of the loan to the subject borrowers or did anything to interfere with the borrowers' understanding of the relevant terms. (Doc. 51 at 38.)

The Amended Complaint alleges that borrowers lacked an understanding of the law applicable to Defendants' loans and how those laws affected repayment

obligations. (Doc. 59 at 17.) The statute provides liability for acts that "take unreasonable advantage of" this kind of lack of understanding. 12 U.S.C. § 5531(d)(2). At this stage of the litigation, with all facts taken as true as required by the 12(b)(6) standard, this allegation sufficiently states a claim for abusive conduct under the CPFA.

### E.    Count IV: Substantial Assistance

Defendants argue that the substantial assistance claim is "wholly derivative" and must be dismissed with Counts I-III. (Doc. 51 at 36.) For the reasons stated above, the Court determines that such dismissal remains unwarranted at this stage of the litigation.

Defendants also argue that Tribal Lenders do not qualify as "persons" or "covered persons" under the CFPA. (Doc. 51 at 37.) The Court declines to decide at this juncture whether Tribal Lenders qualify as "persons" or "covered persons" within the meaning of the statute. The Ninth Circuit determined in *Great Plains Lending*, however, that the CFPB did not "plainly lack[ ] jurisdiction" to issue investigative subpoenas to tribal entities. 846 F.3d at 1050. As 12(b)(6) dismissals remain disfavored, the Court will allow the CFPB to proceed on the substantial assistance claim. Defendants remain free to further develop this defense at summary judgment.

## VI.    Statute of Limitations

Defendants argue that the statute of limitations bars claims against the Subsidiaries for conduct arising before March 28, 2015. (Doc. 51 at 39.) The CFPA bars the CFPB from bringing an action relating to conduct that occurred "more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g).

CFPB began investigating potential violations of the CFPA by Think Finance, the Subsidiaries, and the Tribal Lenders, on approximately June 12, 2012. (Doc. 51 at 39.) Defendants argue that these investigations, therefore, put CFPB on notice of potential violations "by then or shortly afterward." (Doc. 51 at 39.)

CFPB filed its Amended Complaint on March 28, 2018. (Doc. 38.) Consequently, Defendants argue, the Court must dismiss allegations regarding conduct undertaken before March 28, 2015. CFPB entered into a tolling agreement with Think Finance, LLC (formerly Think Finance, Inc.). (Doc. 51 at 40.) CFPB argues that this tolling agreement binds the Subsidiaries as alter egos of Think Finance. (Doc. 59 at 27.) Defendants argue that only Think Finance remains bound. (Doc. 51 at 40.)

The running of the statute must be apparent on the face of the complaint to permit dismissal based on the statute of limitations. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960, 969 (9th Cir. 2010). The

defendant bears the burden of proving that an action is time-barred. *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995).

Defendants' arguments fail for three related reasons. First, Defendants have failed even to attempt to establish when CFPB discovered the Subsidiaries' alleged violations. Without such showing, Defendants cannot meet their burden to demonstrate that this action is time-barred.

Second, the statute refers to the date of discovery. Defendants request dismissal of all claims related to conduct occurring before March 28, 2015. Defendants' request confuses the date of the conduct with the date of CFPB's discovery of the alleged violation. Absent tolling, discussed below, the Amended Complaint properly could encompass any violations that CFPB discovered on or after March 28, 2015, regardless of the date of the underlying conduct.

Third, at this stage, the Court must take as true the allegations pleaded in the Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). CFPB has pleaded that the Subsidiaries exist as alter egos of Think Finance. *See* Part IV, *supra.* This theory of liability thus logically imputes the tolling agreement to the alter egos. *SOS Co. v. –Collar Techs., Inc.*, No. 16-9667, 2017 WL 5714716, at *5 (C.D. Cal. Oct 17, 2017).

**ORDER**

Accordingly, **IT IS HEREBY ORDERED**, that Defendants' Motion to

Dismiss (Doc. 50) is **DENIED**.

DATED this 3rd day of August, 2018.

_____
Brian Morris
United States District Court Judge